**Charles GURULE, in behalf of himself and all others similarly situated, Plaintiffs–Appellees, and Cross–Appellants,**

v.

**Alex WILSON, Warden, Colorado State Penitentiary; Jack Capelli, Associate Warden, Medium Security, Colorado State Penitentiary; Five Unknown Named Guards of Medium Security, Colorado State Penitentiary, Defendants–Appellants, and Cross–Appellees.**

**Frank R. ALLARID, Register No. 41590, Colorado State Penitentiary, Plaintiff–Appellant,**

v.

**Alex WILSON, Warden, Colorado State Penitentiary, individually and in his official capacity, Defendant–Appellee.**

**Henry ALVEREZ, Plaintiff–Appellant,**

v.

**Alex WILSON, Warden, Colorado State Penitentiary, individually and in his official capacity, Defendant–Appellee.**

Nos. 78–2056, 78–2057, 79–1211 and 79–1212.

United States Court of Appeals, Tenth Circuit.

Dec. 1, 1980.

As Amended on Denial of Rehearing Feb. 13, 1981.

Jonathon B. Chase, Boulder, Colo. (Barbara Salomon, Denver, Colo., with him on the brief), The American Civil Liberties Union Foundation of Colorado, Inc., for plaintiffs–appellees and cross–appellants, and plaintiffs–appellants Allarid and Alverez.

William Morris, Asst. Atty. Gen., Litigation Section, Denver, Colo. (J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Edward G. Donovan, Sol. Gen., Denver, Colo., with him on the brief), for defendants–appellants and cross-appellees.

Before SETH, Chief Judge, SEYMOUR, Circuit Judge, and MARKEY,* Judge.

SEYMOUR, Circuit Judge.

This is a consolidated civil rights action brought by inmates of the Colorado State Penitentiary under 42 U.S.C. § 1983. Plaintiffs sought to require defendant prison officials to afford due process before adversely affecting the prisoners' conditions of confinement. Defendants appeal from the district court's order requiring them to comply with the hearing procedures set forth in their Manual and Policy on Classification (Manual). Defendants argue that the order requiring compliance is invalid because the named plaintiffs had already received the relief they requested, rendering their claims moot. Plaintiffs contest the claim of mootness on the ground their suit is a class action encompassing the rights of all inmates at the penitentiary, despite the lack of a formal order certifying the class under Fed.R.Civ.P. 23(c)(1) prior to the entry of summary judgment. Both parties appeal the award of attorneys fees to plaintiffs. We affirm in part and reverse in part.

In September 1974, a fire at the Colorado State Penitentiary destroyed the gymnasium and damaged cells in the prison's maximum security section. As a result of this and other incidents, a number of inmates were transferred to cell blocks with less favorable conditions of confinement.[1] While most inmates were thereafter returned to their previous cell block, some two hundred prisoners, including many of the named plaintiffs in this case, remained in the less desirable cellhouse.

These actions were consolidated in November 1974. At that time, the Supreme Court decision in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), favored plaintiffs' position that they were entitled to Fourteenth Amendment due process before their conditions of confinement could be substantially altered. A footnote in *Wolff* suggested that because solitary confinement constitutes a major adverse change in an inmate's condition of confinement, "there should be minimum procedural safeguards as a hedge against

---

* Honorable Howard T. Markey, Chief Judge, United States Court of Customs and Patent Appeals, sitting by designation.

1. Plaintiff Gurule was transferred from medium security to maximum security for alleged violations of disciplinary regulations. In medium security, Gurule was permitted out of his cell for most of the day, was fed three daily meals, could take advantage of various vocational and educational programs, and was allowed frequent personal visits. In maximum security, he was confined to his cell approximately twenty-three hours a day, had two daily meals taken in his cell, had no access to vocational or educational programs, and was allowed infrequent telephone visits. Gurule alleged that the regressive classification to an area where he was confined within walls was a major adverse change in his condition of confinement because he was previously confined in an area surrounded only by fences.

arbitrary determination of the factual predicate for imposition of the sanction." *Id.* at 571–72 n. 19, 94 S.Ct. at 2982 n. 19. Plaintiffs relied on *Wolff* to contend that regressive classification was similarly subject to due process standards.

This was the state of the law when the parties began an extended period of settlement discussions which focused primarily on the promulgation of classification procedures for the penitentiary. In April 1976, plaintiffs' senior counsel advised the court that a final settlement would be reached within a month. That prediction proved overly optimistic.

No settlement had been effected when the Supreme Court decided *Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), *Montayne v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976), and *Richardson v. Lokey*, 427 U.S. 902, 96 S.Ct. 3186, 49 L.Ed.2d 1196 (1976), which together effectively precluded plaintiffs' claim. Plaintiffs concede these cases make clear that due process is not required before an inmate is regressively classified unless the inmate "has a justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events." *Montayne*, 427 U.S. at 242, 96 S.Ct. at 2547.

By the time these decisions were rendered, however, the parties had drafted a Manual providing procedural fairness in regressive classifications. Although the Manual was not constitutionally mandated after *Meachum, Montayne* and *Richardson*, and despite the inclination of counsel for defendants to "advise the State not to have any of these regulations," rec., vol. V, at 5, the Manual was officially adopted on January 11, 1977.

The regulations contained in the Manual require reclassification of prisoners to be based on the occurrence of specified events. Prison officials must provide an inmate with written notice of the proposed transfer, including a statement citing the precise disciplinary violation and the evidence relied on in making this determination. Since the Manual sets forth the official statement of policy, defendants concede that it creates an expectation rooted in state law and consequently a liberty interest arises in favor of the inmates. *See Walker v. Hughes*, 558 F.2d 1247 (6th Cir. 1977).

In July 1977, plaintiffs filed a motion to compel defendants' compliance with the Manual, asserting defendants had failed on several occasions to follow its procedures and would continue to do so unless restrained by the court. Defendants responded with a motion for summary judgment, contending plaintiffs' claims were moot. They also argued the proposed order would improperly impair their discretion by prohibiting them and their successors from altering the Manual. The district court entered judgment on April 6, 1978, ordering defendants' compliance with the Manual. The order permits revision of the regulations so long as the amendments meet the minimal standards of due process set forth in *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974).

On July 10, 1978, plaintiffs filed a contempt motion citing five violations of the April 6 order, all involving a denial of pre–transfer rights guaranteed by the Manual. Because the violations concerned inmates who were not named plaintiffs, defendants argued that any remedies available to these prisoners had to be sought in an independent action. The court strongly disagreed:

> "The case was intended to be a class action, and anybody that looks at these pleadings would know that . . . . Now, I don't like these ridiculous approaches that [the regulations] are just meant for Mr. Gurule . . . . That was not the intention."

Rec., vol. VII, at 15. Nonetheless, plaintiffs withdrew their contempt motion and instead requested class certification through a motion to correct the judgment under Fed. R.Civ.P. 60(a).

After hearing the Rule 60(a) motion, the court certified the class by an order incorporated into an amended judgment filed August 14, 1978. The order stated that class certification had been omitted unintention-

ally from the original judgment. The court found that the prerequisites of Fed.R.Civ.P. 23(a) were met and concluded that a class action was proper under Rule 23(b)(2).

Defendants contested the belated class certification and moved under Fed.R.Civ.P. 59(e) to amend the amended judgment by striking reference to class certification. They argued that class certification requires an express legal determination and is not a "mistake" eligible for correction under Rule 60(a). They also asserted that the district court lacked subject matter jurisdiction to amend its judgment four months after entry of the original judgment and beyond the time for appeal. The district court granted defendants' motion and entered its second amended judgment on October 25, 1978, decertifying the plaintiff class.

The second amended judgment also awarded attorneys fees to the plaintiffs under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. Although plaintiffs initially requested fees in their complaint, they did not submit their formal application for fees until June 27, 1978, two and one–half months after the original judgment was entered. The court found plaintiffs to be the prevailing party and awarded a total fee of $4,360.

The issues on appeal are 1) whether the second amended judgment is the final order in this action for purposes of 28 U.S.C. § 1291; 2) whether the district court erred in its ultimate conclusion that it was without authority to certify a class after its April 6 order; 3) whether summary judgment was proper; 4) whether plaintiffs were prevailing parties for purposes of an award of attorneys fees under 42 U.S.C. § 1988; and 5) whether the amount awarded as attorneys fees was proper.

## I.

### Final Judgment

A timely appeal from a final order of the trial court is a jurisdictional prerequisite to our consideration of the matter. 28 U.S.C. § 1291; *Gooch v. Skelly Oil Co.*, 493 F.2d 366 (10th Cir.), *cert. denied*, 419 U.S. 997, 95 S.Ct. 311, 42 L.Ed.2d 270 (1974). Each party in this case filed a timely appeal from the district court's second amended judgment entered on October 25, 1978. The first judgment was entered on April 6, 1978. If that judgment were final for purposes of section 1291, significant issues would exist concerning the district court's power to twice amend its judgment, as well as the timeliness of this appeal. Because we hold that the second amended judgment is the final order, such issues are not presented.

A final order "is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); *Century Laminating, Ltd. v. Montgomery*, 595 F.2d 563 (10th Cir. 1979). This definition promotes the congressional policy against piecemeal adjudication of claims. *See Gardner v. Westinghouse Broadcasting Co.*, 437 U.S. 478, 480, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1978).

The specific issue here is whether the district court's failure to consider the issue of attorneys fees prior to entering the original judgment resulted in an interlocutory order. Recent cases have held that a decision finding liability is not "final" unless the losing party knows the extent of the remedy afforded against it. In *Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976), the Supreme Court dismissed the appeal where the trial court held that defendant's employee insurance benefits and maternity leave regulations discriminated against women but failed to determine the remedy. The Court noted that plaintiffs "requested an injunction, but did not get one; they requested damages, but were not awarded any; they requested attorneys' fees, but received none." *Id.* at 742, 96 S.Ct. at 1205. *See also United States v. Dember Construction Corp.*, 600 F.2d 11 (4th Cir. 1979) (order not final where liability established but damages not fixed); *Barrett v. Grand Trunk Western Rd.*, 581 F.2d 132 (7th Cir. 1978) (appeal interlocutory where court or-

dered company to give employee earlier seniority date but did not determine back pay award).

In *Richerson v. Jones*, 551 F.2d 918 (3d Cir. 1977), the Third Circuit relied on *Liberty Mutual* to hold that a judgment ordering retroactive promotion, back pay, and interest in an action for employment discrimination under section 717 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16 was not final because the trial court failed to dispose of the plaintiff's prayer for substantial attorneys fees.

*Liberty Mutual* and *Richerson* were cited by the Supreme Court in *Boeing Co. v. Van Gemert*, 444 U.S. 472, 100 S.Ct. 745, 62 L.Ed.2d 676 (1980). There the district court had entered judgment against Boeing for $3,289,359 plus interest, and had ordered Boeing to pay that amount into escrow for the class of plaintiffs. While the district court did not set the actual amount of attorneys fees, it indicated such fees would be paid out of the total amount awarded against Boeing. Boeing appealed, contending attorneys fees should only be awarded on a percentage basis out of that portion of the total award actually claimed by absentee class members. The issue of final judgment was raised, and the Court said:

> "Although the District Court did not fix the amount of attorney's fees to be assessed against absentee class members, its judgment terminated the litigation between Boeing and the class concerning the extent of Boeing's liability. See *Swanson v. American Consumer Industries, Inc.*, 517 F.2d 555, 559–561 (CA7 1975). *This is not a case, like Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976), where a prayer for attorney's fees against an opposing party remains unanswered.* See *Richerson v. Jones*, 551 F.2d 918, 921–2 (CA3 1977). Thus, the judgment awarding the class a fixed recovery was final and appealable."

*Id.* at 480, n. 5, 100 S.Ct. at 750 n. 5 (emphasis added).

█ In this case, plaintiffs asked for attorneys fees in their original complaint, but the trial court failed to address the issue in its April 6 order. The court ultimately awarded fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, in its October 25 amended judgment. We hold that the failure of the April 6 order to dispose of the attorneys fees issue rendered that judgment interlocutory.

Section 1988 provides: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 of this title, . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." This statute was enacted to provide an additional remedy to a party who prevails in an action to enforce his civil rights. The attorneys fees "are an integral part of the remedies necessary to obtain such compliance." The Civil Rights Attorney's Fees Awards Act of 1976, S.Rep.No. 1011, 94th Cong., 2d Sess. 5, *reprinted in* [1976] U.S.Code Cong. & Ad.News, pp. 5908, 5913 (S.Rep.No. 1011). Thus, section 1988 is similar to 42 U.S.C. § 1983 itself, which does not create substantive rights but provides a remedy for the deprivation of rights and privileges secured by the Constitution and federal laws. *See Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 617–18, 99 S.Ct. 1905, 1915–1916, 60 L.Ed.2d 508 (1979). In its judgment of April 6, the district court granted injunctive relief, a remedy permitted by section 1983, but failed to grant attorneys fees, an additional remedy permitted by section 1988. Until attorneys fees were awarded, the trial court had not fully decided the extent of defendants' liability. To treat the April 6 order as final would engender the piecemeal litigation the final judgment rule seeks to deter.

Our conclusion accords with the recent First Circuit decision in *White v. New Hampshire Department of Employment Security*, 629 F.2d 697 (1st Cir. 1980), that a request for attorneys fees under section 1988 must be made prior to judgment or within the ten days provided in Fed.R. Civ.P. 59(e) for altering or amending the judgment. The court distinguished section 1988 attorneys fees from ordinary "costs"

which are capable of routine calculation and are unlikely to generate controversy.

"Not so the discretionary award of attorney's fees under section 1988. To calculate such an award, indeed, even to determine whether one should be made at all, the district court must evaluate possibly a dozen diverse factors, see *King v. Greenblatt*, 560 F.2d 1024, 1026 (1st Cir. 1977), *cert. denied*, 438 U.S. 916 [98 S.Ct. 3146, 57 L.Ed.2d 1161] (1978), including such factors as the novelty and difficulty of the legal questions presented and the skill required to perform the particular services provided. Moreover, in determining the propriety and size of a fee award, the district court is generally assisted by submissions from the parties and frequently finds it necessary, as was true here, to hold a hearing on the matter. Appeals often ensue–leading to the prospect of separate fees appeals if final judgment rules are disregarded–as the sizeable sums involved may impose a very substantial and bitterly disputed liability upon the losing party. Hence while such fees, like routine costs, are, to be sure, somewhat ancillary to the main dispute, they are fully capable of engendering a major controverted claim which will be closely intertwined with the merits of the primary dispute and which will require careful factual and legal analysis by the court. The considerations making it feasible to treat routine costs as an exception to final judgment rules–the ease of their computation and the fact that they almost never give rise to dispute or appeal–plainly do not apply to section 1988 attorney's fees. Thus we do not believe that a section 1988 fees award can be likened to the costs assessed routinely after entry of judgment."

*Id.* at 702–703; *but see Bond v. Stanton*, 630 F.2d 1231, at 1233–1234 (7th Cir. 1980); *Knighton v. Watkins*, 616 F.2d 795, 797–98 (5th Cir. 1980). The First Circuit concluded that "[t]he ultimate award of fees is, in our view, clearly a part of the overall relief sought and granted during the course of a particular civil rights action." 629 F.2d at 704.

This case is an excellent illustration of the close relationship between the merits of a civil rights action and the right to attorneys fees under 42 U.S.C. § 1988. Defendants contend that plaintiffs are not "prevailing" parties within the meaning of section 1988. *See* part IV, *infra*. To determine whether plaintiffs prevailed on the merits, it was necessary for us to review the entire record with the same scrutiny as our review to determine the outcome on the merits. Thus, the propriety of the fee award and the correctness of the decision on the merits are inextricably bound. *See* parts II & III, *infra*. Holding the district court's judgment of April 6 to be final would effectively require separate appeals of these interdependent issues. With the policy against piecemeal litigation in mind, we believe the better rule is that where an award of attorneys fees is sought in a civil rights action, a judgment on the merits is not final until the remedy of attorneys fees has been addressed and decided.

We hold the district court's second amended judgment awarding attorneys fees and rescinding its previous class certification order to be the final order in this action under 28 U.S.C. § 1291. The parties' cross–appeals are therefore timely.

## II.

### Class Certification

■ The district court has the power to enter or modify an order until it renders a final judgment. *See, e. g., Zimmern v. United States*, 298 U.S. 167, 56 S.Ct. 706, 80 L.Ed. 1118 (1936); *Director of Revenue v. United States*, 392 F.2d 307, 308–310 (10th Cir. 1968); *Suggs v. Mutual Benefit Health & Accident Association*, 115 F.2d 80, 82 (10th Cir. 1940). Since the district court's final judgment was not entered until October 25, it had jurisdiction to certify the plaintiff class on August 11. Thus, the issue is not of power but of propriety: whether Fed.R.Civ.P. 23 permits formal class certification after a decision on the merits under the circumstances of this case.

Rule 23(c)(1) provides that as soon as practicable after commencement of suit brought as a class action, the court shall determine by order whether it is to be so maintained. While the words "as soon as practicable" have no hard definition, they call for "as early a determination as the circumstances permit." *Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 274 (10th Cir. 1977). Due to the unusual circumstances in this case, we conclude that the post–judgment certification did not violate Rule 23(c)(1).

In October 1974, the complaint was filed by plaintiff Gurule as a class action seeking injunctive relief for himself and for the class he represents. Prior to filing an answer, defendants requested an opportunity to settle the central matter of classification of prisoners. The court granted a delay to permit discussions concerning classification procedures. Thereafter, defendants and plaintiffs engaged in "an incredible and interminable series of negotiations, in trying to come up with a classification policy." Rec., vol. VI, at 31.

In March 1976, plaintiffs were granted an order enjoining defendants from "reclassifying or transferring *plaintiff* Walker," rec., vol. I, at 131 (emphasis added), whose transfer to a diagnosis center was alleged to be an adverse change in his condition of confinement. Significantly, Walker was not a named plaintiff. Responding to plaintiffs' motion for a temporary restraining order on behalf of Walker, defendants objected to joining Walker in the existing lawsuit on the ground that his transfer to the diagnostic unit was not within the dimensions of the litigation. This objection was aimed at the typicality of Walker's claim and not to the fact that he was not a named party in the action. In granting the temporary restraining order, the court stated that Walker's claim was "properly within the gravamen ... of the original complaint." Rec., vol. IV, at 8.

During August 1977 in one of the consolidated cases, defendants stipulated with the named Mexican–American plaintiffs, who had sued on behalf of all other similarly situated, that defendants would henceforth not discriminate against Mexican–American inmates. The stipulation concluded by stating that the case would be dismissed "with the understanding that the matters of classification generally will be resolved in the primary civil action." Rec., vol. I, at 137.

At a joint status conference on January 27, 1977, plaintiffs told the court they would like an order entered directing defendants and their successors to comply with their own regulations on regressive reclassification. Plaintiffs stated they would submit a proposed order that "would provide for class certification, [and] that the regulations be observed ...." Rec., vol. V, at 9. Subsequently they circulated a proposed order that included certification of a class pursuant to Rule 23(b)(2). At a March hearing, the court said it would treat plaintiffs' motion for entry of order as a motion for summary judgment. In the course of argument over how far the court should go in ordering compliance with the reclassification regulations, the court commented:

"Now, I don't know and there hasn't been pointed out to me any specific part of this document which causes any great burden to the State, and you say what we should do is treat this on a case–by–case basis.

"That's exactly what I don't want to do. I have consolidated about 13 of these cases here so that we can handle them.

"This started out as a class action. We don't want to have to have a trial every year when any defendant or any prisoner down at Canon City feels that he has been mistreated in the application of some regulation. Now that's what it seems to me."

Rec., vol. VI, at 37.

When the court entered its original judgment of April 6, 1978, it did not explicitly decide the class certification issue. In its accompanying Memorandum Opinion and Order, however, the court referred broadly to the due process rights of prisoners generally and fashioned relief for the entire prison community.

When plaintiffs thereafter moved for formal class certification, the court made plain its belief that the action had been "treated as a class action by me and by the lawyers in this case for the last four years." Rec., vol. VII, at 27. The court ordered the judgment corrected to explicitly provide for class certification. Subsequently, the court decertified the class because it became convinced it lacked authority to certify a class after a decision on the merits.

In similar cases of failure to act on a pending class action motion, post–judgment class certification has been permitted. *See Marshall v. Kirkland*, 602 F.2d 1282, 1301 (8th Cir. 1979); *Johnson v. Mathews*, 539 F.2d 1111, 1125 n. 23 (8th Cir. 1976); *Jimenez v. Weinberger*, 523 F.2d 689 (7th Cir. 1975); *Bing v. Roadway Express, Inc.*, 485 F.2d 441 (5th Cir. 1973). In *Bing*, the appellate court certified the plaintiff class despite the district court's failure to make a Rule 23(c)(1) determination.[2] The plaintiff had brought the action as a class action and the trial court granted relief aimed at the class. The Fifth Circuit inferred that the district court had approved the class status of the litigation:

"To say that this is not a class action would be to ignore the substance of the proceedings below in favor of an excessively formalistic adherence to the Federal Rules of Civil Procedure. We believe the trial court's implicit determination of the class action question satisfies Rule 23(c)(1)."

*Id.* at 447. *See also Senter v. General Motors Corp.*, 532 F.2d 511, 520–22 (6th Cir. 1976); *Lau v. Nichols*, 483 F.2d 791, 793 n. 4 (9th Cir. 1973), *rev'd on other grounds*, 414 U.S. 563, 94 S.Ct. 786, 39 L.Ed.2d 1 (1974). In this case, we need not infer the intention of the district court. The court evidenced its intention through a post–judgment class certification.[3]

Under the circumstances of this case, we are persuaded that the certification was not error under Rule 23(c)(1). In reaching this conclusion, we are influenced by the fact that the class sought only injunctive relief and was certified under Rule 23(b)(2), which does not require that notice be given to class members.

"[I]t is fair to infer that the timing of the certification may well be different in (b)(3) cases than in (b)(1) or (b)(2) cases. For in the (b)(3) situation it is imperative that the class members be identified early enough to enable notice to be sent to them which in turn will give them a meaningful opportunity to request exclusion from the class."

*Jimenez v. Weinberger*, 523 F.2d at 697.

Since the district court erred in its ultimate conclusion that it was without authority to certify the class after it had decided the merits, we reinstate its order holding the suit maintainable as a class action under Rule 23(b)(2).

## III.

### Summary Judgment

Defendants contend the district court erred by ordering defendants' compliance with the Manual because procedural due process was being afforded to named plaintiffs, rendering their claims moot. Our reinstatement of the district court's class certification order significantly undercuts this argument. *See Preiser v. Newkirk*, 422 U.S. 395, 402, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272 (1975).

Defendants adopted a version of the Manual detailing regressive classification procedures as early as August 1975. The record indicates continuing violations of the Manual and its earlier drafts. Instances of

---

**2.** The Supreme Court has expressly left open the issue "whether a Court of Appeals should ever certify a class in the first instance." *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977).

**3.** The class certified by the trial judge consists of "[a]ll present and future inmates of the Colorado State Penitentiary who have been or will be transferred within the prison where such transfer represents a major change in the conditions of confinement and is a result of regressive classification of such inmates." Rec., vol. II, at 229.

noncompliance occurred both before and after the district court directed that defendants follow their own regulations.

■ Injunctive relief is designed to deter future wrongful acts. *United States v. W. T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). The likelihood of future violations is inferred from the totality of circumstances, including the commission of past illegal conduct. *SEC. v. Management Dynamics, Inc.*, 515 F.2d 801, 807 (2d Cir. 1975). *See also United States v. Oregon State Medical Society*, 343 U.S. 326, 333, 72 S.Ct. 690, 695, 96 L.Ed. 978 (1952). In light of defendants' past and present violations of the Manual and its earlier drafts, it was reasonable for the district court to infer that future misconduct would occur. We affirm its order that defendants comply with their own regulations concerning regressive classifications.

## IV.

### Propriety of Attorneys Fees Award

Section 1988 permits the award of a reasonable attorneys fee to the "prevailing party" in an action brought under 42 U.S.C. § 1983. In its final judgment, the district court held plaintiffs to be prevailing parties and awarded $4,360 to them as attorneys fees. The court noted the extent of plaintiffs' contribution in the effort to formulate a statement of policy to protect inmates' rights and concluded: "The existence of that Manual can be traced, in large part, to the pressures imposed by this litigation, and plaintiffs' attorneys played a significant role in negotiating the terms of the Manual." Rec., vol. II, at 266.

Defendants stipulated the amount of hours claimed by each of plaintiffs' three attorneys. The court found that plaintiffs prevailed in approximately 60% of the issues they presented. The lump sum award compensated each of plaintiffs' three lawyers at hourly rates of $33, $21, and $20, respectively. The different rates were

based on counsels' relative expertise, experience, and the comparative in–court time expended.

Both parties appeal this award. Plaintiffs contend the fee is inadequate. Defendants contest any award, arguing that plaintiffs were not the prevailing party within the meaning of section 1988 because the relief sought by plaintiffs was gratuitously granted by defendants' voluntary adoption of the Manual.[4]

### A.

### Plaintiffs as prevailing parties

■ To resolve whether plaintiffs are the prevailing party, we must view the litigation as a whole. Although 42 U.S.C. § 1988 confers discretion on the district court to determine the propriety of a fee award, the prevailing party should ordinarily recover an attorneys fee unless special circumstances would render such an award unjust. *Love v. Mayor of Cheyenne*, 620 F.2d 235, 236 (10th Cir. 1980).

■ A close review of the record compels our conclusion that plaintiffs prevailed in this action. The initial complaint sought the right to notice and a hearing prior to adverse changes in an inmate's condition of confinement. The district court noted the causal relationship between plaintiffs' initiation of this action, later negotiations and settlement discussions, and defendants' adoption of regulations affording due process to inmates prior to regressive classification. Defendants conceded in their brief supporting their motion for summary judgment that the Manual "came into existence following the filing and because of these lawsuits." Rec., vol. I, at 147. Moreover, the district court specifically ordered defendants' compliance with the regulations they had promulgated. Plaintiffs' lawsuit was a catalyst in securing the procedural rights they sought. *See Fischer v. Adams*, 572 F.2d 406, 410 (1st Cir. 1978); *Parham v. Southwestern Bell Telephone Co.*, 433 F.2d 421, 429–30 (8th Cir. 1970).

---

4. Defendants also contend that plaintiffs' application for the award of fees was untimely. This contention is without merit in view of our

holding that the district court's final judgment was rendered on October 25, 1978.

792

Defendants contend that finding a causal relationship between plaintiffs' lawsuit and defendants' adoption of the Manual is insufficient to establish that plaintiffs were the prevailing party entitled to an award of fees. They point out that their adoption of the Manual was voluntary. Relying on *Nadeau v. Helgemoe*, 581 F.2d 275 (1st Cir. 1978), defendants argue that because their denial of due process requirements prior to the Manual's adoption was not in violation of federal law, plaintiffs did not legally prevail and may not recover attorneys fees. In *Nadeau*, the First Circuit stated:

> "Even if plaintiffs can establish that their suit was causally related to the defendants' actions which improved their condition, this is only half of their battle. The test they must pass is legal as well as factual. If it has been judicially determined that defendants' conduct, however beneficial it may be to plaintiffs' interests, is not required by law, then defendants must be held to have acted gratuitously and plaintiffs have not prevailed in a legal sense."

*Id.* at 281. In *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 418, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978), a Title VII action, the Court said "when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law." More recently, however, the Court held that " '[p]arties may be considered to have prevailed when they vindicate rights through a consent judgment or without formally obtaining relief.' " *Maher v. Gagne*, ___ U.S. ___, ___, 100 S.Ct. 2570, 2573, 65 L.Ed.2d 653 (1980) (quoting S.Rep.No. 1101, *supra*).

This is not a case where plaintiffs' claims were found insubstantial. The district court ultimately granted judgment against defendants, ordering them to comply with due process standards before regressively reclassifying inmates at the penitentiary. It is through this legal victory that plaintiffs became the "prevailing party."

The chronology of this action bolsters our conclusion. Initially, we note that at the time this suit was instituted, satisfaction of due process standards as a prerequisite to regressive classification was arguably required under prevailing federal law. *See Wolff v. McDonnell*, 418 U.S. 539, 571 n. 19, 94 S.Ct. 2963, 2982 n. 19, 41 L.Ed.2d 935 (1974); *Romero v. Schauer*, 386 F.Supp. 851 (D.Colo.1974) (applying *Wolff* one month

after complaint was filed herein). From plaintiffs' filing of this action in October 1974 until the decision in *Meachum* was rendered in June 1976, federal law favored plaintiffs. After the adoption of the Manual in January 1977, plaintiffs were legally entitled to due process prior to a regressive classification under the standards set forth in *Meachum*. The validity of plaintiffs' position was doubtful only during the six months from June 1976 to January 1977. Given the six year history of this litigation, we are unable to conclude that plaintiffs were not the "prevailing party" in a legal sense. We find no special circumstances that would render an award of fees unjust, and thus hold that the district court was correct in awarding fees to plaintiffs.

B.

*Amount of the Fee Award*

Plaintiffs contend that the amount of the attorneys fees awarded by the district court is insufficient. In setting the amount, the trial judge took into consideration his conclusion that plaintiffs prevailed in only 60% of the matters they presented. The record indicates that the judge deducted time spent by plaintiffs in seeking to have the class certified and in opposing defendants' decertification motion. Since we have reversed the court's conclusion that it could not amend its order to certify a class, this action must be remanded for the court to award attorneys fees for time spent on the class issue. In addition, plaintiffs are entitled to attorneys fees for prevailing on appeal. *See Love v. Mayor of Cheyenne*, 620 F.2d at 237. As the trial court recognized, time spent resolving the fee issue should be included. *See id.* On remand, we deem it appropriate for the trial court to determine the time spent and the fees to be awarded for the appellate work.

Plaintiffs object strenuously to the amounts of $33 per hour for lead counsel, and $21 and $20 per hour for associate counsel. While we may not substitute our judgment for the discretion of the trial court on the amount of the award, we believe it to be quite low in view of the underlying purposes of section 1988 and the court's finding that lead counsel for plaintiffs is an expert in prison due process litigation. Since we believe the trial judge may have utilized some inappropriate fac-

tors in determining the initial award, we offer some guidance for remand.

■ In its order setting attorneys fees, the court considered as a factor the compensation provided to attorneys of indigent criminal defendants under the Criminal Justice Act (CJA), 18 U.S.C. § 3006A(d). The CJA sets as a maximum rate $30 per hour for in court time and $20 per hour for out of court time. The CJA fees are not a proper consideration in determining a reasonable award under section 1988. The fees allowed by the CJA are the result of the unique features of the criminal defense system, which requires compensation for court appointed counsel for indigent defendants regardless of the outcome of the case. *See Rodriguez v. Taylor,* 569 F.2d 1231, 1249 (3d Cir. 1977). The legislative history of section 1988 emphatically states Congressional intent that "the amount of fees awarded under [that section] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases . . . ." S.Rep.No. 1011, *supra,* at 6, U.S.Code Cong. & Ad.News 1976, p. 5913. Whereas' the CJA fees were not intended by Congress to fully compensate the appointed attorney for his time, H.R. Rep.No. 1546, 91st Cong., 2d Sess. ——, *reprinted in* [1970] U.S.Code Cong. & Ad. News, pp. 3982, 3984 (adopting identical language of Senate Report No. 790), Congress clearly stated its intent that an award under section 1988 provide reasonable counsel fees "which are adequate to attract competent counsel . . . ." S.Rep.No. 1011, *supra,* at 6, U.S.Code Cong. & Ad.News 1976, p. 5913. An award that does not fully compensate an attorney for his time plainly does not meet the standard of reasonable fees required by section 1988. *See King v. Greenblatt,* 560 F.2d 1024, 1026 (1st Cir. 1977), *cert. denied,* 438 U.S. 916, 98 S.Ct. 3146, 57 L.Ed.2d 1161 (1978).

The trial court also reduced the award by an amount proportionate to the extent plaintiffs did not prevail, citing *Pearson v. Western Electric Co.,* 542 F.2d 1150, 1153 (10th Cir. 1976). However, *Pearson* was a Title VII suit in which the plaintiff was denied attorneys fees because he was not the prevailing party. We did not there consider the legislative history of section 1988, which was enacted by Congress one day before our decision. We have since held that the factors listed in the Senate Report No. 1011, *supra,* should be con-

sidered in arriving at a fee award under 1988. *See Love v. Mayor of Cheyenne,* 620 F.2d at 237.

In S.Rep. No. 1011, Congress cited three cases exemplifying the correct application of the standards governing fee awards: *Swann v. Charlotte·Mecklenburg Board of Education,* 66 F.R.D. 483 (W.D.N.C.1975); *Stanford Daily v. Zurcher,* 64 F.R.D. 680 (N.D.Cal.1974), *aff'd,* 550 F.2d 464 (9th Cir. 1977); and *Davis v. County of Los Angeles,* 8 Empl.Prac.Dec. (CCH) ¶ 9444 (C.D.Cal. 1974). The two cases specifically addressing the issue of proportionate reduction, *Davis* and *Stanford Daily,* recognize its limitations. The court in *Stanford Daily* noted that several recent decisions have granted fees for legal work "reasonably calculated" to promote the client's interest even if unsuccessful, and stated that "courts should not require attorneys (often working in new or changing areas of the law) to divine the exact parameters of the court's willingness to grant relief." 64 F.R.D. at 684. The *Davis* decision concluded as a matter of law that:

> "It also is not legally relevant that plaintiffs' counsel expended a certain limited amount of time pursuing certain issues of fact and law that ultimately did not become litigated issues in the case or upon which plaintiffs ultimately did not prevail. Since plaintiffs prevailed on the merits and achieved excellent results for the represented class, plaintiffs' counsel are entitled to an award of fees for all time reasonably expended in pursuit of the ultimate result achieved in the same manner that an attorney traditionally is compensated by a fee paying client for all time reasonably expended on a matter."

8 Empl.Prac.Dec. (CCH) ¶ 9444, at 5049.

■■ Fees set under section 1988 must be in line with those fees traditionally received from a fee-paying client. S.Rep.No. 1011, *supra,* at 6. Courts rejecting the proportionate recovery rule have pointed out that fee-paying clients do not traditionally receive a discount for issues upon which the attorney did not prevail. *See, e. g., Northcross v. Board of Education,* 611 F.2d 624, 635–36 (6th Cir. 1979), *cert. denied,* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). A technical dissection of the course of litigation and a mechanical proportionate reduction of the total fee is not in keeping with either the express intent of Congress

or the broad remedial purposes of the Civil Rights Acts. Where the "issue was all part and parcel of one matter counsel should not be penalized for every lost motion." *Lamphere v. Brown University*, 610 F.2d 46, 47 (1st Cir. 1979). Of course, attorneys fees should not be awarded for issues that are frivolous or asserted in bad faith. *See, e. g., Northcross*, 611 F.2d at 636; *Stanford Daily*, 64 F.R.D. at 684.

█ The hourly amount of the award is within the discretion of the trial judge who is familar with the case and the prevailing rates in the area. Given the congressional instruction to the courts "to use the broadest and most effective remedies available to achieve the goals of our civil rights laws," S.Rep.No. 1011, *supra*, at 3, U.S.Code Cong. & Ad.News 1976, p. 5910, the hourly amount awarded here seems parsimonious. *Compare Battle v. Anderson*, 614 F.2d 251 (10th Cir. 1980) (prisoner's rights suit upholding an award based on a rate of $60 per hour to an attorney associated with the litigation since 1975).

This case is remanded for a redetermination of attorneys fees for plaintiffs as prevailing parties below and on appeal. In making this award, the court should articulate its reasoning to demonstrate how it reached its conclusion. *See Love v. Mayor of Cheyenne*, 620 F.2d at 237.

### On Rehearing

On consideration of the defendant's petition for rehearing with a suggestion for rehearing en banc, we believe a clarification of one part of our opinion is in order. We stated that in awarding attorneys fees to the prevailing party under 42 U.S.C. § 1988, it is inappropriate to proportionately reduce the fee for every motion where the party prevails overall on the main issue in the case. It was not out intention to suggest that a court may never proportionately reduce a requested attorneys fee for time spent on *substantial separate* issues which a plaintiff raises but on which he does not prevail. In any event, we need not decide that issue because in this case, the plaintiffs' action was directed solely at one effort, to force the defendant prison officials to afford due process before adversely affecting the prisoners' conditions of confinement. The only issue that might arguably be separable for the purpose of awarding attorneys fees was the class certification matter. Since we held on appeal that the

trial court's original order certifying the class must be reinstated, any proportionate fee reduction the court may have made with respect to that issue was error.

As thus clarified, the opinion previously entered is reaffirmed.