**BLACK GOLD, LTD., a Colorado Corporation, Plaintiff,**

v.

**ROCKWOOL INDUSTRIES, INC., a Delaware Corporation, Defendant.**

Civ. A. No. 78–K–578.

United States District Court,
D. Colorado.

Dec. 17, 1981.

John W. Madden, II, Kenneth R. Bennington, Brownstein, Hyatt, Farber & Madden, Thomas D. Smart, Jr., Smart, DeFurio & Brooks, Denver, Colo., for plaintiff.

John G. Wigmore, Richard C. Neal, Lawler, Felix & Hall, Los Angeles, Cal., Jeffrey Smith, John P. Congdon, Cohen, Brame, Smith & Krendl, Denver, Colo., for defendant.

### MEMORANDUM OPINION AND ORDER AWARDING ATTORNEYS FEES

KANE, District Judge.

In what I now learn is an excessive reverence for practicality I have delayed ruling on the plaintiff's motion for attorneys fees. By *per curiam* opinion, the Court of Appeals, *ex proprio vigore* advises that the judgment in this action is "non final" (sic) and will remain so until I resolve the matter of attorneys fees. The problems with determining attorneys fees in piece-meal fashion are easily describable. I will first determine the reasonable value of attorneys fees for services performed from the inception of the case through the trial and post-trial motions up to and including November 14, 1980. This determination will be added to the other rulings and verdicts which were unsuccessfully appealed and a new appeal will be launched. If the case is reversed on the issues of liability, the determination and time expended will have been for naught. If the case is affirmed, it will be necessary for the Court of Appeals to remand so that I can then conduct another hearing and determine the amount of attorneys fees to be awarded for the conduct of proceedings on appeal following November 14, 1980. (*See Pushkin v. The Regents of the University of Colorado, et al.*, No. 81–1224, D.C. No. 80–K–1097, Order of Partial Remand, Oct. 9, 1981.) That second determination will then be subject to another appeal. I could, and in the future will, give serious consideration to the direction of entry of final judgment to fewer than all of the claims of the parties as provided by Rule 54(b), F.R.Civ.P. Presently, however, the fair implication of the *per curiam* opinion is that I should decide the pending motion and so I will.

■ A successful plaintiff in an antitrust action is entitled to attorney fees as a matter of right under the Clayton Act § 4, 15 U.S.C. § 15. It is this entitlement as a matter of right which distinguishes the award of attorneys fees in antitrust cases from civil rights cases and most other statutory actions which provide that the award of attorneys fees is discretionary. Further analysis shows that such distinctions present vexing problems, but I will not burden this memorandum opinion with a discussion which is already contained in *Ramos v. Lamm*, 77–K–1093 (opinion and order awarding attorney fees).

■ In *West v. Capitol Federal S & L Ass'n*, 558 F.2d 977 (10th Cir. 1977), the court stated the general rule that "(i)n antitrust cases the attorney's fee is not limited to a portion of the recovery but is computed on the basis of the worth of the services." *Id.* at 981 (citing *Courtesy Chevrolet, Inc. v. Tennessee Walking Horse B. & E.A.*, 393 F.2d 75, 77 (9th Cir.) *cert. denied*, 393 U.S. 938, 89 S.Ct. 301, 21 L.Ed.2d 274 (1968). The court is not bound by any fee agreement between plaintiff and counsel. *Pitchford v. Pepi, Inc.*, 531 F.2d 92, 110–111 (3d Cir. 1975), *cert. denied*, 426 U.S. 395, 96 S.Ct. 2649, 49 L.Ed.2d 387 (1976), and fees in excess of the judgment may be awarded, *Morning Pioneer Inc. v. Bismarck Tribune Co.*, 493 F.2d 383, 390 (8th Cir.), *cert. denied*, 419 U.S. 836, 95 S.Ct. 64, 42 L.Ed.2d 63 (1974).

The Tenth Circuit did not elaborate in *West* on the appropriate criteria to use in determining the amount of the attorneys fees award, but other courts have. Generally, three sets of criteria exist: the percentage-of-recovery approach; the Twentieth Century Fox factors, which Judge Arraj applied in *E.J. Delaney Corp. & Ski Kit, Inc. v. Bonne Bell, Inc.*, (1975) 75–2 Trade Reg. Rep. (CCH) ¶ 60,419 (D.Colo.1974); and the "lodestar analysis" which Judge Finesilver followed in *Oppenlander v. Standard Oil Co. (Indiana)*, 64 F.R.D. 597 (D.Colo.1974). These criteria are briefly summarized as follows:

A. *Percentage-of-Recovery*. This mode of analysis requires the court to award attorney's fees in antitrust actions based on the size of plaintiff's award. *See, e.g., Webster Motor Car Co. v. Packard Motor Car Co.*, 166 F.Supp. 865 (D.D.C.1955), *rev'd & cross appeal re attorney's fees dismissed as moot*, 243 F.2d 418 (D.C.Cir.), *cert. denied*, 355 U.S. 822, 78 S.Ct. 29, 2 L.Ed.2d 38 (1975). It has been criticized and virtually abandoned by the courts, *see Knutson v. Daily Review, Inc.*, 479 F.Supp. 1263, 1268 (N.D.Cal.1979), and cases cited, and rejected by the Tenth Circuit, *West, supra*, at 981.

B. *Twentieth Century Fox Factors.* The Ninth Circuit in *Twentieth Century Fox Film Corp. v. Goldwyn*, 328 F.2d 190, 221, (9th Cir. 1964), adopted criteria for determining reasonable attorney's fees which were applied by Judge Arraj in a section 1 and 2 Sherman action, see *Delaney, supra*, at pp. 66, 848–849. Those factors are:

1. whether plaintiff's counsel had the benefit of a prior judgment or decree in a case brought by the Government,

2. the standing of counsel at the bar—both counsel receiving the award and opposing counsel,

3. time and labor spent,

4. magnitude and complexity of the litigation,

5. responsibility undertaken,

6. the amount recovered,

7. the knowledge the court had of the conferences, the arguments that were presented and of work shown by the record to have been done by attorneys for plaintiff prior to trial,

8. what it would be reasonable for counsel to charge a victorious plaintiff.

*Accord, Morning Pioneer, Inc. v. Bismarck Tribune Co.*, 493 F.2d at 390 n.15 (excluding criterion (8)). *See generally* Comment, *Attorney's Fees in Individual and Class Action Antitrust Litigation*, 60 Calif.L.Rev. 1656 (1972).

C. *"Lodestar" Analysis.* This most recent mode of analysis is a functional method for applying the criteria previously used by courts in determining an award of

attorney's fees. The "lodestar" analysis was originally articulated in *Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167–79 (3d Cir. 1974) (*Lindy I*), and *Lindy Bros. Bldrs., Inc. v. American Radiator & Standard Sanitary Corp.*, 540 F.2d 102, 112–18 (3d Cir. 1976) (*Lindy II*), and endorsed by Judge Finesilver in *Oppenlander, supra*, at 614–16.[1] Using the "lodestar" analysis the court must first take into account two factors:

1. the hours expended by counsel which contributed to the recovery, and

2. the reasonable value of counsel's time, usually counsel's normal hourly billing rates.[2]

*Pitchford v. Pepi, Inc.*, 531 F.2d at 110. The "lodestar" of the court's fee determination is then adjusted by two remaining factors:

3. the "contingent nature of success" in the action,[3] and

4. the quality of the work performed.[4] *Id.*

A third stage was added to the "lodestar" analysis in *Hughes v. Repko*, 578 F.2d 483, 490–493 (3d Cir. 1978) (civil rights), which is applicable in antitrust actions. The "post-*Lindy* discretionary adjustment" takes into account the "government policies" underlying the applicable fee statute and substantive rights involved, and such factors as the customary fee for similar work, the amount received in damages, and fee awards made in similar cases in order to assure the overall fairness of the award. *Knutson v. Daily Review, Inc.*, 479 F.Supp. at 1269 (*referring to Hughes, supra*, at 492). Because the public weal is furthered by enforcement of the antitrust laws, additional compensation may be appropriate for counsel in certain circumstances.[5]

1. *Oppenlander* was not an antitrust case but a securities class action. Several other courts have followed the "lodestar" analysis. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 469–474 (2d Cir. 1974) (*Grinnell I*); *City of Detroit v. Grinnell Corp.*, 560 F.2d 1093, 1098–1103 (2d Cir. 1977) (*Grinnell II*); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 128–129 (8th Cir.), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975); *Knutson v. Daily Review, Inc.*, 479 F.Supp. 1263 (S.D.Cal.1979); *see also, Brandenburger v. Thompson*, 494 F.2d 885, 890 n.7 (9th Cir. 1974).

2. Where a number of attorneys are involved the court may apply different rates reflecting skill, expertise, experience, and reputation. *Lindy I, supra*, at 167.

3. The application of this factor works much like the normal contingency fee arrangement and thus the court may award additional compensation for the risk undertaken. *See* Hammond, *Stringent New Standards for Award of Attorney's Fees*, 32 Bus.Law. 523, 527–528 (1977). The court in *Lindy II* detailed the subfactors to be considered under this criterion:
   1. Analysis of plaintiff's burden. * * * (a) the complexity of the case,—legally and factually; (b) the probability of defendant's liability,—whether it is clear or dubious; whether it has been previously suggested by other civil or criminal proceedings; whether it is asserted under existing case law or statutory interpretation, or is advanced as a novel theory; (c) an evaluation of damages,— whether the claims would be difficult or easy to prove.

2. Risks assumed in developing the case. * * * (a) the number of hours of labor risked without guarantee of remuneration; (b) the amount of out-of-pocket expenses advanced for processing motions, taking depositions, etc.; (c) the development of prior expertise in the particular type of litigation; recognizing that counsel sometimes develop, without compensation, special legal skills which may assist the court in efficient conduct of the litigation, or which may aid the court in articulating legal precepts and implementing sound public policy.
   3. The delay in receipt of payment for services rendered.
   *Lindy II, supra*, at 117.

4. Here the court should "appraise the manner in which counsel discharged his or her professional responsibilities." *Lindy II, supra*, at 117. The court should not alter the award on the basis that the hourly rate charged exceeds general rates if the expertise of the attorney warrants such rates; the award should be augmented or diminished only if the lawyer discharged the professional burden undertaken with a degree of skill above or below that expected. *Id.* at 117–118.

5. This additional compensation, however, is probably more likely to be warranted in civil rights actions, where competent counsel may be scarce and resources limited, than in antitrust actions where counsel are abundant to represent competing businesses in the allegations of restraint of trade.

The foregoing authorities do not resolve the issue of determining the applicable hourly rate when an attorneys fee award is to be calculated for services performed in previous years: Is the applicable hourly rate the one the attorney used when the work was done, or is it his current rate? I can find no Tenth Circuit case on this point.

Other courts have taken three different approaches to this issue:

A. use the attorney's current hourly rate;

B. use the hourly rate in effect when the services were performed; and

C. use the hourly rate in effect when the services were performed, but then adjust it for inflation and delay.

Most decisions directly on point follow the first approach.

In *In re THC Financial Corp. Litigation*, 86 F.R.D. 721, 740 (D.Hawaii 1980), the court noted the division of authority:

> There is a division among the courts as to whether the hourly rate to be applied is the current rate or the rate that was charged during the earlier period when the services were actually rendered. It has been held that current hourly rates should be used in the lodestar calculation to minimize the detrimental effect of inflation upon the fee award. *In re Ampicillin Antitrust Litigation*, 81 F.R.D. 395 (D.D.C.1978); *In re Master Key Antitrust Litigation*, 76 F.R.D. 460 (D.Conn.1977), aff'd, 580 F.2d 1045 (2d Cir. 1978); *City of New York v. Darling Delaware*, 440 F.Supp. 1132 (S.D.N.Y.1977). Other courts have held expressly that the hourly rate to be applied is not the current rate but the rate in force when the work was done. *Desimone v. Industrial Bio-Test Laboratories, Inc.*, 83 F.R.D. 615 (S.D.N.Y.1979); *Weiss v. Drew Nat'l Corp.*, 465 F.Supp. 548, 552 (S.D.N.Y.1979); *Kane v. Martin Paint Stores*, 439 F.Supp. 1054, 1055 (S.D.N.Y.1977), aff'd 578 F.2d 1368 (2d Cir. 1978).

The court went on to note that the evidence before it did not sharply differentiate between the two rates, but seemed to be based on current rates, an approach that the court apparently followed. *Id.* at 742.

Other courts have merely stated that they will use current hourly rates as a rough adjustment for the effects of delay and inflation. *See, e.g., Van Gemert v. Boeing Co.*, 516 F.Supp. 412, 417 (S.D.N.Y. 1981); *Mader v. Crowell*, 506 F.Supp. 484, 487 (M.D.Tenn.1981); *Cantor v. Detroit Edison Co.*, 86 F.R.D. 752, 767 (E.D.Mich.1980).

■ Of the courts that use the hourly rate for the time when the services were rendered, some just state that this is the proper rate. *See, e.g., Desimone v. Industrial Bio-Test Laboratories*, 83 F.R.D. 615, 621 (S.D.N.Y.1979). Others state that the delay and inflation factors should be incorporated in the contingency factor of the multiplier. *See, e.g., Weiss v. Drew National Corp.*, 465 F.Supp. 548, 552–53 (S.D.N.Y. 1979). I think this latter approach should be avoided, but the instant order dismissing the appeal requires me to use it. It has all of the problems of standardless discretion that should be avoided in using a multiplier. If the hourly rate used is that which was in existence at the time services were rendered, then that lodestar should be adjusted for inflation and delay just like any other damage award is adjusted for these factors. I see no reason to single out attorneys fees for arbitrary treatment.

The plaintiff's attorneys have submitted a claim for attorneys fees in the amount of $138,479.88. The judgment entered in favor of the plaintiff and against the defendant is in the amount of $280,050. The amount claimed for attorneys fees was calculated by multiplying hours actually worked by the hourly rate then charged by the particular individual performing the work. The claims are charted as follows:

| Attorney | Hours | Averaged Rate | Claim |
|---|---|---|---|
| Mr. Madden | 521.9 | $ 57 | $29,766.34 |
| Mr. Robins | 1.1 | 66 | 66.67 |
| Mr. Bennington | 681.8 | 46 | 31,804.62 |

| Attorney | Hours | Averaged Rate | Claim |
|---|---|---|---|
| Mr. Bayer | 37.8 | 34 | 1,302.50 |
| Ms. Tipton [6] (paralegal) | 249.25 | 11 | 2,908.74 |
| Ms. Doversberger (paralegal) | 1.3 | 10 | 13.00 |
| Unidentified Associates | 4.0 | 33 | 132.00 |
| Mr. Smart [7] | 485.65 | 149.25 | 72,486.01 |
| TOTAL | 1,982.8 | | $138,479.88 |

The defendant filed a detailed brief opposing the plaintiff's claim for attorneys fees. It is interesting to note that the defendant does not question the accuracy of reporting of time, but rather directs its opposition to questions of excessiveness, reasonableness and duplication. Further, defendant urges me to reject time spent and fees incurred in pursuing unsuccessful claims. I have reviewed the time records and considered defendant's objections. Based on this review I will make certain adjustments of the raw figures in order to arrive at the lodestar figure.[8]

■ A. Mr. Madden's time includes 89.3 hours for trips to Salt Lake City and Washington, D. C. The Salt Lake City trips were to review files in a case against Rockwool in the United States District Court for the District of Utah and the Washington trip was for a two-day conference with the Federal Trade Commission. None of these trips produced any evidence used at trial nor action taken by the F.T.C. against Rockwool. Accordingly, I disallow recovery for this time and expenses incurred.

■ B. Mr. Smart's time includes 38 hours for trips accompanying Mr. Madden once to Salt Lake City and to Washington, D. C. I disallow recovery for this time and expense for the same reasons as stated above. Further, the computation of Mr. Smart's hourly rate by dividing the amount claimed by the hours reported results in an excessive rate. I do not agree with defendant's suggested rate of $40 per hour, however. Mr. Smart is a lawyer who enjoys an excellent and deserved reputation as a skilled and respected lawyer in this community. He has practiced law for about the same time as has Mr. Madden. It is significant that Mr. Smart was the general attorney for the plaintiff and that he brought Mr. Madden and his firm into the case for assistance. His knowledge of the plaintiff's business, employees and history was exceedingly valuable for the conduct of the case. I conclude that he should be compensated at a rate equal the averaged charge of Mr. Madden, viz., $57 per hour.

■ C. Defendant also objects to $2,892 of fees for attendance of two attorneys at most depositions. There is no hard and fast rule which can be applied. Clearly, a losing party should not be required to pay for unnecessary costs, but some latitude must be given to the prevailing parties counsel in making such decisions. Particular attention must be paid to the circumstances of each case. In this instance, it is reasonable that Mr. Smart should appear for the depositions of his client's personnel along with trial counsel. The case, how-

---

6. I know that some judges reject the idea that attorneys fees awards can include work performed by paralegals. The law is not very helpful because the use of paralegals is a fairly recent innovation. Nevertheless, it is a fact of modern practice which cannot be ignored. I hold that paralegal fees which enhance the value of the lawyers service and reduce overall costs to the consumers constitute an efficiency which is compensable as a matter of equity.

7. Mr. Smart is a partner in a firm which is different from that of the other plaintiff's counsel. Mr. Smart brought the Madden firm into the case because of their special expertise.

8. Plaintiff's claim and attached exhibits do not set out the total hours or the average hourly rates it claims. The figures used here were computed by defendant's counsel based upon his study of plaintiff's exhibits.

ever, does not justify the presence of two trial lawyers at depositions. Accordingly, I will reduce the number of hours logged at depositions by Mr. Bennington when Mr. Madden was present as well. This totals 16.95 hours.

D. Finally, defendant objects to the payment of fees incurred pursuing its unsuccessful tying and refusal to deal claims in the amount of $37,835. There is no Tenth Circuit case which addresses this point. Some courts hold that an antitrust plaintiff cannot recover attorneys fees incurred pursuing unsuccessful claims. *See, Kane v. Martin Paint Stores, Inc.*, 439 F.Supp. 1054, 1057 (S.D.N.Y.1977). *Beech Cinema v. Twentieth Century Fox Film Corp.*, 480 F.Supp. 1195, 1196–97 (S.D.N.Y. 1979). Of course, at this juncture I don't know whether plaintiff ultimately will be successful on any or all of the issues in the case. The *per curiam* opinion of December 9, 1981 states, "Like the Third Circuit, we see no reason why civil rights cases should be distinguished from antitrust cases for purposes of determining when a judgment is final."

■ I can only conclude that the body of law which addresses this issue is no longer to be applied in this circuit. In *Gurule v. Wilson*, 635 F.2d 782, 793 (1980) the Tenth Circuit stated:

Fees set under section 1988 must be in line with those fees traditionally received from a fee paying client. S.Rep. No. 1011, *supra*, at 6. Courts rejecting the proportionate recovery rule have pointed out that fee paying clients do not traditionally receive a discount for issues upon which the attorney did not prevail. *See,*

*e.g., Northcross v. Board of Education,* 611 F.2d 624, 635–36 (6th Cir. 1979), *cert. denied* 447 U.S. 911, 100 S.Ct. 2999, 64 L.Ed.2d 862 (1980). A technical dissection of the course of litigation and a mechanical proportionate reduction of the total fee is not in keeping with either the express intent of Congress or the broad remedial purposes of the Civil Rights Acts. Where the 'issue was all part and parcel of one matter counsel should not be penalized for every lost motion.' *Lamphere v. Brown University,* 610 F.2d 46, 47 (1st Cir. 1979). Of course, attorneys fees should not be awarded for issues that are frivolous or asserted in bad faith. *See, e.g., Northcross,* 611 F.2d at 636; *Stanford Daily [v. Zurcher],* 64 F.R.D. at 684.

There is, of course, no suggestion in this case that issues were asserted frivolously or in bad faith. The issues which I decided were argued by able counsel and my decision in each instance was quite close. Given the instruction of *Gurule* and the apparent lack of distinction between civil rights and antitrust cases I hold that plaintiff is entitled to recover for work performed on issues upon which it did not prevail, but which were asserted in good faith and were part and parcel of the matters in controversy between the parties.

■ E. Plaintiff also claims $132 for unidentified associates time. If the plaintiff's attorneys cannot keep track of their associates, I don't think the defendant should have to pay.

By applying the foregoing adjustments to plaintiffs raw figures the chart which shows the lodestar figure follows:

| Attorney | Hours | Rate | Claim |
|---|---|---|---|
| Mr. Madden | 432.6 | $57 | $24,658.20 |
| Mr. Robins | 1.1 | 66 | 72.60 |
| Mr. Bennington | 664.85 | 46 | 30,583.10 |
| Mr. Bayer | 37.8 | 34 | 1,285.20 |
| Ms. Tipton (paralegal) | 249.25 | 11 | 2,741.75 |
| Ms. Doversberger (paralegal) | 1.3 | 10 | 13.00 |
| Unidentified Associates | 0 | 33 | 0.00 |
| Mr. Smart | 447.65 | 57 | 25,516.05 |
| TOTAL | 1,834.55 | | $84,869.90 |

Net hourly rate: $46.26.

Having established a lodestar of $84,869.90, I must now decide whether the fee should be adjusted. As previously mentioned, I think some adjustment must be made because of delay and inflation. Further, the considerations can be incorporated in a contingency factor. I think such a contingency factor is justified here because the case has some unusual aspects. *See Black Gold Ltd. v. Rockwool Industries,* C.A. 78–K–578, (unpublished order, April 9, 1980) for details. While the case is not factually complicated the legal issues are close ones. The plaintiff recognized the contingent nature of the case when it made its fee arrangement with counsel. The probability of success before a jury was less than clear and I am unable to make any prognostication concerning success on appeal. In this case plaintiff's counsel did not have the benefit of any prior judgment or decree in a case brought by the government. Their quality of work met the highest standards and expectations of a demanding court. Plaintiff's counsel were opposed by distinguished and highly competent attorneys who gave every indication of being exceedingly skilled specialists in antitrust litigation. In other words, plaintiff's counsel were strongly put to the test and to work every inch of the way to their victory. All of these factors render an incentive award appropriate. *Stenson v. Blum, et al.,* 512 F.Supp. 680 (1981). Multipliers which reflect such an incentive award range from 110% to 350% in *Keith v. Volpe,* 501 F.Supp. 403 (C.D.Cal.1980). The problem with using such a multiplier is that there are no standards and the trial judge is cast adrift in a sea of judicial discretion. If the truth be known, the process of arriving at the precise multiplier is more a function of gestalt than cerebration. In the instant case I add to my knowledge of the plaintiff and the amount of the verdict and the time, stress and energy expended by counsel, a sense of what is appropriate in cases of this nature based upon my own participation in similar cases as a trial lawyer. I recognize the obvious criticism for what I am saying; it was stated by John Selden in 1689:

Equity is a roguish thing. For Law we have a measure, know what to trust to; Equity is according to the conscience of him that is Chancellor, and as that is larger or narrower, so is Equity. 'Tis all one as if they should make the standard for the measure we call a 'foot' a Chancellor's foot; what an uncertain measure would this be! One Chancellor has a long foot, another a short foot, a third an indifferent foot. 'Tis the same thing in the Chancellor's conscience.[9]

Having made this confession I determine that the lodestar should be adjusted upward by a factor of 1.25. Thus, it is

ORDERED that plaintiff shall have judgment for attorneys fees for work performed up to and including November 14, 1980 in the amount of $106,087.37 and, it is

FURTHER ORDERED that the judgment previously entered is amended accordingly.

---

**9.** Table Talk [1689] Equity.