David C. **VAUGHTER** and Donald H. Sigler, **Plaintiffs,**

v.

**EASTERN AIR LINES, INC.**, a Delaware Corporation; a Voluntary Fixed Benefit Pension Retirement Plan initiated by Eastern Air Lines, Inc. in 1947; a Non-Contributory Fixed Benefit Pension Retirement Plan initiated by Eastern Air Lines, Inc. in 1965, **Defendants.**

No. 80–3379–Civ.

United States District Court, S.D. Florida, Miami Division.

Aug. 29, 1985.

David Popper, Miami, Fla., for plaintiffs.

Fran Anania, Miami, Fla., for defendants.

### MEMORANDUM OPINION

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

SPELLMAN, District Judge.

The Plaintiffs, David C. Vaughter and Donald H. Sigler,[1] are retired pilots who were employed by Eastern Air Lines, Inc.

---

1. Mr. Sigler is now deceased.

("Eastern") at the time of their retirement.[2] In their Amended Complaint, Plaintiffs allege that for several years prior to 1965, they participated in, and made voluntary contributions to, the Eastern Air Lines Fixed Benefit Retirement Income Plan of 1947. Plaintiffs further allege that in 1965 Eastern initiated a new pension plan which did not provide for voluntary contributions.[3] Plaintiffs claim that the adoption of this new plan resulted in a forfeiture of their contributions to the 1947 Pension Retirement Plan along with their rights, benefits and interest in the past contributions.[4]

2. On July 9, 1982, this Court determined that Plaintiffs' suit should be maintained as a class action pursuant to Fed.R.Civ.P. 23(a). The Plaintiffs are maintaining this action on behalf of "all those pilots employed by EASTERN [Air Lines, Inc.] at any time between October 1, 1947 and June 1, 1965 (who may be retired or may still be on active status) who made voluntary contributions to the "EASTERN AIR LINES Fixed Benefit Pension Retirement Plan for Pilots." *See* February 3, 1983 Notice of Pendency of Class Action and of Rights of Class Members.

3. Despite Plaintiffs' contention that there are two "separate and distinct plans," *see* Supplemental Affidavit of David C. Vaughter, filed on June 6, 1985, this Court finds that there is, and always has been, only one Fixed Benefit Retirement Income Plan for Pilots. Section 1.7 of the Eastern Air Lines Fixed Benefit Retirement Income Plan, "as amended, in part, on June 1, 1970" (five years after the date on which Plaintiffs allege the 1947 Plan was terminated by the "new plan"), states that the effective date of the Plan is October 1, 1947. *See* Exhibit B to Affidavit of Alan C. Gibson, Exhibit F to Defendants' Response to Plaintiffs' Reply to Motion for Summary Judgment. Moreover, the introduction to this edition of the Plan notes that "[t]he Eastern Air Lines Fixed Benefit Retirement Income Plan became effective October 1, 1947, and was amended from time to time with the amendment as of June 1, 1969, being the last amendment prior to the amendments herein set forth." *Id.*

The informational booklet issued by Eastern to its pilots in 1968 pertaining to the Fixed Benefit Retirement Income Plan also details the origins of, and the 1965 amendment to, the Plan. Page 1 of the 1968 booklet provides:

In 1947, Eastern established a Retirement Income Plan to help all of us look forward to the security of an assured monthly income in the years after our retirement from active service. *Effective June 1, 1965, Eastern assumed the entire cost of the Plan. This Plan was further modified in minor areas effective July 1, 1968.*

Exhibit D to Affidavit of Alan C. Gibson, Exhibit F to Defendants' Response to Plaintiffs' Reply to Motion for Summary Judgment (emphasis supplied); *see also* Exhibit C to Affidavit of Alan C. Gibson, Exhibit F to Defendants' Response to Plaintiffs' Reply to Motion for Summary Judgment (1966 informational booklet).

Seemingly undaunted by the overwhelming evidence submitted by Defendants, the Plaintiffs point to Eastern's Notice of the Annual Meeting of Stockholders, June 25, 1985, and Proxy Statement. *See* Exhibit A to Supplemental Affidavit of David C. Vaughter, filed June 6, 1985. Plaintiffs claim that language contained in the Notice constitutes an admission by the Defendants that there are two pension plans. According to the Plaintiffs, the relevant provision, bearing the heading "Retirement Plans," states:

On October 1, 1947, the Company established an employee retirement income plan based on an individual's earnings and period of employment and initially funded with contributions by both the Company and such individual. Subsequently, revised non-contributory retirement income plans were made effective on June 1, 1965 for cockpit personnel, on Janauary 1, 1968 for employees not covered by collective bargaining agreements, on June 2, 1969 for employees covered by an agreement with the International Association of Machinists and Aerospace Workers ("IAM"), and on July 2, 1977 for employees covered by an agreement with the Transport Workers Union of America. Past service benefits under predecessor plans were transferred to such plans.

While this Court has examined the cited language, it cannot, quite frankly, concur in Plaintiffs' conclusion that the provision establishes that there are two pension plans. The informational booklets issued by Eastern and the June 1, 1970 version of the Plan, which bears an effective date of October 1, 1947, make it clear that there is only one Fixed Benefit Retirement Income Plan pertaining to pilots. There can be no serious dispute over the fact that the Plan originated in 1947 and was merely amended in 1965 to relieve participating pilots from contributing to the Plan.

4. Plaintiffs allege that this forfeiture is prohibited by the Employee Retirement Income Security Act ("ERISA"). Plaintiffs further allege that Eastern negligently failed to notify Plaintiffs of the forfeiture; that Eastern breached its fiduciary duty to the contributing pilots; that Eastern breached the provisions of the Group Annuity Contract entered into by Eastern and the Prudential Insurance Company of America (Plaintiffs claim they are third-party beneficiaries of the contract); that Eastern and the Plan were unjustly enriched by the forfeiture; and that Eastern wrongfully commingled and converted Plaintiffs' voluntary contributions.

In this action, Plaintiffs seek to have their voluntary contributions returned to them.[5]

The Defendants have admitted that Eastern maintains the Eastern Air Lines Fixed Benefit Retirement Income Plan but have denied every other material allegation in the Amended Complaint. Defendants asserted ten affirmative defenses.[6]

Presently before the Court are the parties' cross-motions for summary judgment.[7] For the following reasons, Defendants' motion is granted and Plaintiffs' motion is denied.

I

At all times material hereto, Plaintiffs' employment with Eastern was governed by a collective bargaining agreement between Eastern and the Air Line Pilots Association, International, AFL–CIO ("ALPA"). ALPA is, and since 1941 has been, the officially designated collective bargaining representative for all Eastern pilots.

On October 1, 1947, however, Eastern initiated a retirement plan, financed by voluntary contributions of the pilots and supplemental contributions by Eastern. ALPA, which represented the pilots at that time, had no role in negotiating the original plan or any modifications of the plan until 1960. *See* Affidavit of Alan C. Gibson, Exhibit F to Defendants' Response to Plaintiffs' Reply to Motion for Summary Judgment.[8] In 1965, as a direct result of collective bargaining negotiations between Eastern and ALPA, the plan was amended to relieve participating pilots of the burden of contributing to the plan. *See* Footnote 3.

Article X of the retirement plan establishes the Eastern Air Lines Retirement Board, a system adjustment board.[9] Article XI of the plan grants the Retirement

---

**5.** Specifically, Plaintiffs request an accounting of the total voluntary contributions of each pilot and accrued interest; the return of all voluntary contributions and accured interest; a Declaratory Judgment that the rights of the class members are non-forfeitable and fully vested; a Judgment that the class is entitled not only to the voluntary contributions made to the 1947 Plan, but also to any benefits accruing by virtue of the 1965 Plan; a Judgment that voluntary contributions made to the 1947 Plan may not be commingled with the assets of the 1965 Plan; an award of attorneys' fees; and any other damages or equitable relief the Court deems proper.

**6.** Defendants contend that the action is barred by the applicable statute of limitations; that the matters complained of were the subject of collective bargaining and not subject to suit; that the matters complained of are governed by the Railway Labor Act; that the Court lacks subject matter jurisdiction; that Plaintiffs are estopped to maintain this action by operation of the doctrine of laches; that the matters complained of were the subject of an accord and satisfaction; that Plaintiffs failed to perform all conditions precedent to the institution of this suit; that Plaintiffs were contributorily and comparatively negligent; that there is no wrongful detention of any specific chattel belonging to Plaintiffs; and that this action is barred by arbitration and award.

**7.** On March 19, 1985, this Court entered an Order Denying the Cross-Motions for Summary Judgment. Because the parties believed that the case was "in a proper posture for summary judgment," the parties filed a joint request "for a status conference for the purpose of determining the nature of any questions of fact which, in the view of the Court, preclude entry of summary judgment at this time." After reviewing the file, this Court decided to "treat the Joint Request for Status Conference as a Joint Motion to Reconsider this Court's Order Denying the Cross-Motions for Summary Judgment." Oral argument on the motions was heard on July 19, 1985. The Joint Motion to Reconsider is now granted.

**8.** *But see Loveless v. Eastern Air Lines, Inc.,* 681 F.2d 1272, 1273 (11th Cir.1982). In *Loveless,* the Eleventh Circuit noted that "Eastern's retirement plan [was] established in 1947 as part of the collective bargaining agreement between Eastern and the Air Line Pilots Association."

**9.** Article X of the retirement plan provides, in pertinent part:

10.1 There shall be established a Retirement Board (hereinafter referred to as the "Board") consisting of four members, two of whom shall be selected by Eastern and two of whom shall be selected by the Association. Eastern shall establish its own rules for the selection of the members of the Board to be selected by it and the Association shall likewise establish its own rules for the selection of the members of the Board to be selected by it.

Exhibit B to Defendant's Response to Plaintiff's Reply to Motion for Summary Judgment, Article X, at 26.

Board jurisdiction to hear and determine "[a]ll disputes concerning the application, interpretation or administration of the Plan in respect to individual employees and their participation in or their benefits under the Plan."[10] Exhibit B to Defendants' Response to Plaintiffs' Reply to Motion for Summary Judgment, at 27. "All determinations by the Retirement Board ... shall be final and binding upon Eastern, the Association and any other person having an interest in, under or derived from the Plan." *Id.*

On June 2, 1980, David C. Vaughter petitioned Eastern "for a return of all voluntary contributions made by him into the 'Pilots' Fixed Benefit Retirement Income Plan prior to June 1, 1965."[11] Exhibit H to Defendants' Response to Plaintiffs' Reply to Motion for Summary Judgment. "Pursuant to the Agreement between Eastern Air Lines, Inc., and the air line pilots in its service, as represented by the Air Line Pilots Association, International," Vaughter asked for a hearing on his claim. Exhibit G to Defendants' Response to Plaintiffs' Reply to Motion for Summary Judgment. Vaughter's claim was referred to the Eastern Air Line Pilots' System Board of Adjustment. *See* Exhibit K to Affidavit of David C. Vaughter.

On September 2, 1980, the Pilots' System Board of Adjustment rendered a decision "In the Matter of the Grievance of D.C. Vaughter," holding that "this matter be directed to the Pension Dispute Board." Exhibit M to Affidavit of David C. Vaughter. The Pension Dispute Board is the successor board to the Retirement Board, which is designated in Article XI of the retirement plan as the arbitration panel empowered to conclusively determine all disputes arising out of the plan. *See* Document No. 66 to the 1977 ALPA/Eastern Collective Bargaining Agreement, filed July 26, 1985.

On November 25, 1980, the Pension Dispute Board unanimously denied Vaughter's claim. The Board, consisting of two members chosen by Eastern and two members chosen by ALPA, determined:

> The Eastern Air Lines, Inc., Fixed Benefit Retirement Income Plan for Pilots and the Agreement between Eastern Air Lines, Inc., and the Air Line Pilots in the service of Eastern Air Lines, Inc., as represented by the Air Line Pilots Association, International, do not provide for the refund of voluntary contributions made by pilots prior to June 1, 1965.

Exhibit N to Affidavit of David C. Vaughter. Accordingly, the Board held that Vaughter's request for the return of the voluntary contributions "must be denied."

Dissatisfied with the Board's unanimous decision, the Plaintiffs initiated this action on December 19, 1980. Plaintiffs seek to recover the same benefits to which the Pension Dispute Board found they were not entitled. In effect, Plaintiffs are petitioning this Court to reverse the ruling of the Pension Dispute Board. This the Court will not do.

## II

In 1936, Congress extended the Railway Labor Act to cover the then small-

---

10. Article XI of the retirement plan provides, in pertinent part:

11.1 All disputes concerning the application, interpretation or administration of the Plan in respect to individual employees and their participation in or their benefits under the Plan shall be heard and determined by the Retirement Board.

11.2 All decisions and actions taken by the Retirement Board under this Article XI shall be by the affirmative vote or agreement of not less than three members. Such affirmative vote or agreement shall be in writing if given other than during a meeting of the Retirement Board. All determinations by the Retirement Board of disputes described in Section 11.1 above shall be final and binding upon Eastern, the Association and any other person having an interest in, under or derived from the Plan.

Exhibit B to Defendants' Response to Plaintiffs' Reply to Motion for Summary Judgment, Article XI, at 27.

11. Vaughter also petitioned Captain T.R. Buttion, Senior Vice President, Flight Operations, for an investigation into his claim. Captain Buttion directed Vaughter's petition to the Pension Dispute Board for adjudication.

but-growing air transportation industry. 45 U.S.C. §§ 181–188. Its general aim was to extend to air carriers and their employees the same benefits and obligations available and applicable in the railroad industry. *See* Hearings on S. 2496 before a Subcommittee of the Senate Committee on Interstate Commerce, 74th Cong., 1st Sess. 26–27. But there was to be a significant variation. The 1936 amendments made applicable to the airlines all of the provisions of the Railway Labor Act, excepting § 3, 45 U.S.C. § 153, dealing with the National Railroad Adjustment Board. In place of § 3, Congress provided in 45 U.S.C. § 185 that the creation of a National Air Transport Board would be postponed until "in the judgment of the National Mediation Board, it shall be necessary to have a permanent national board of adjustment...." Until the establishment of the national board for the airlines industry, 45 U.S.C. § 184 required the formation of system, group or regional boards of adjustment:

It shall be the duty of every carrier and of its employees, acting through their representatives, selected in accordance with the provisions of sections 181 to 188 of this title, to establish a board of adjustment of jurisdiction not exceeding the jurisdiction which may be lawfully exercised by system, group, or regional boards of adjustment, under the authority of section 153 of this title.

The boards of adjustment enjoy exclusive jurisdiction over disputes between the air carriers and their employees "growing out of grievances, or out of the interpretation or application of [the parties' collective bargaining] agreements...." *Id.* The boards' decisions are final and binding on both parties to the dispute. *See International Association of Machinists, AFL–CIO v. Central Airlines, Inc.,* 372 U.S. 682, 694, 83 S.Ct. 956, 963, 10 L.Ed.2d 67 (1962).

■ Pursuant to statutory requirement, Eastern, as the employer, and ALPA, as the collective bargaining representative for Eastern pilots, established the Eastern Air Lines Retirement Board as a system board of adjustment under the collective bargain-

ing agreement. Eastern and ALPA conferred upon the Retirement Board (now the Pension Dispute Board) exclusive jurisdiction to hear and determine "[a]ll disputes concerning the application, interpretation or administration of the Plan." Additionally, all Board decisions are "final and binding upon Eastern, the Association and any other person having an interest in, under or derived from the Plan." *Id.* The scope of judicial review of the Board's labor arbitration decisions is thus "exceedingly narrow." *Loveless v. Eastern Air Lines, Inc.,* 681 F.2d 1272, 1275 (11th Cir.1982). Nonetheless, Plaintiffs assert, in conclusory fashion, that this Court may properly vacate the decision of the Pension Dispute Board. This Court disagrees.

■ In *Mills v. Braniff Airways, Inc.,* 527 S.W.2d 838 (Tex.Civ.App.1975), a Texas court held that a pilot could not relitigate the decision of a retirement board in an independent judicial proceeding when the terms of the retirement plan provided that the remedies under the plan were exclusive. The court noted that the retirement plan "is a contract, binding alike on employer and employee.... To seek the benefits accruing under the contract is to submit to the burdens thereof; the bitter must be accepted with the sweet." *Id.* at 840 (quoting *Bruner v. Mercantile National Bank,* 455 S.W.2d 323 (Tex.Civ.App.1970) ).

Similarly, in *Loveless v. Eastern Air Lines, Inc.,* the Eleventh Circuit construed the very retirement plan involved in this case. The dispute in *Loveless* arose out of the plan's definitions of the terms "normal retirement age" and "normal retirement date." The Plaintiffs, three retired Eastern pilots covered by the Fixed Benefit Retirement Income Plan, claimed that the plain meaning of these terms entitled them to supplemental retirement benefits. Eastern declined to pay these benefits and the dispute was referred to the Retirement Board. The Board found that the pilots were not entitled to the supplemental benefits. The pilots thus instituted suit against Eastern in the United States District Court

for the Southern District of Florida. The court vacated the Board's decision, holding that the Board exceeded its jurisdiction in failing to apply unambiguous language in the collective bargaining agreement.

On appeal, the Eleventh Circuit reversed, concluding that the district court had erred in vacating the Board's decision. In reaching this conclusion, the circuit court recognized that Eastern, as an air carrier operating in interstate commerce, is covered by the provisions of the Railway Labor Act; that the Retirement Board to which Plaintiffs submitted their dispute is a system board of adjustment created by the collective bargaining agreement; and that the decision of an adjustment board may be overturned only on the basis of one of the grounds listed in 45 U.S.C. § 153 First (q).

The court stated:

In recognition of the limited judicial role in the arbitration process, courts have typically confined their scrutiny of awards to the broad contours of procedural fairness and arbitral impartiality....

The substantive grounds for vacating labor arbitral awards that do exist are extremely narrow. In the railway labor field, 45 U.S.C. § 153 First (q) provides that an arbitral award may be vacated for failure "to conform, or confine itself, to matters within the scope of the division's jurisdiction." ... The courts have determined that this provision of Section 153 is, in effect, a statutory codification of certain substantive grounds that would justify the vacation of an arbitral award in other areas of labor law.... As exposited by the courts, there appear to be three interrelated grounds for such substantive review of arbitral awards: (1) whether the award is irrational, *see, e.g., Gunther v. San Diego & Arizona E. Ry.,* 382 U.S. 257, 261, 86 S.Ct. 368, 370, 15 L.Ed.2d 308 (1965) ("wholly baseless and completely without reason")...; (2) whether the award draws its essence from the letter or purpose of the collective bargaining agreement, ... *see*

*Brotherhood of Railroad Trainmen v. Central of Georgia Ry.,* 415 F.2d [403] at 412 [(5th Cir.1969)] (arbitrator's award "must have a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the collective bargaining agreement"); ... and

(3) whether the arbitrator conformed to a specific contractual limitation upon his authority....

*Loveless,* 681 F.2d at 1275–76. In reviewing the statutory background of the Railway Labor Act, the court discussed the reasons for the judiciary's limited role in labor disputes.

The exceedingly narrow scope of judicial review of labor arbitration decisions is tailored to suit the vital role that the arbitrator plays in the scheme of federal labor law. Not only is the arbitrator himself a linchpin of the ongoing collective bargaining relationship, the expeditiousness and the finality of the arbitration process serve to defuse the chronic crises that inhere in the labor setting and thereby prevent these crises from developing into labor unrest. To the extent that the courts intrude into this scheme, they detract both from the central role of the arbitrator and the palliative effect of the arbitration process.

*Id.* at 1275 (citations omitted).

Noting that the collective bargaining agreement at issue contained no express constraint on the authority of the arbitrator to interpret the agreement, the Eleventh Circuit found that the decision of the Retirement Board drew its essence from the letter or purpose of the collective bargaining agreement. Accordingly "[i]t was the responsibility of the district court to affirm the award." *Id.* at 1280.

■ In this case, Plaintiffs argue that the decision of the Pension Dispute Board (formerly the Retirement Board) may be vacated because the decision does not comport with the essence of the collective bar-

gaining agreement.[12] This Court again disagrees.

The Eastern Air Lines Benefit Retirement Income Plan bears an effective date of October 1, 1947. While ALPA had no role in negotiating the original plan, ALPA did, on behalf of the pilots, negotiate the terms of the 1965 amendment. And in that disputes arising under the plan could be expeditiously and conclusively determined, Eastern and ALPA created the Retirement Board. In 1977, "[t]he duties of the Retirement Board ... [were] delegated to a 'Pension Dispute Board.'" Document No. 66 to the 1977 ALPA/Eastern Collective Bargaining Agreement, filed July 26, 1985.

The Pension Dispute Board, in accordance with the powers granted to it under the plan, decided Vaughter's dispute adversely to him. The Board determined that neither the Plan nor the collective bargaining agreement provide for the refund of voluntary contributions made by pilots prior to June 1, 1965. In that the plan is now the subject of collective bargaining and the Board specifically based its decision on the plan and the collective bargaining agreement, this Court finds that the arbitral award draws its essence from the collective bargaining agreement. *See Textile Workers Union v. Textile Paper Products, Inc.*, 405 F.2d 397, 399 (5th Cir.1968) ("The award clearly indicates that it finds its source in the collective bargaining agreement. Having determined this, judicial inquiry should end.") The Pension Dispute Board, composed of designees of both Eastern and ALPA, reached its decision on the basis of a construction of the collective bargaining agreement that comported with the essence of the agreement. It is not now open to this Court "to assay the legal correctness of the reasoning pursued." [13] *Safeway Stores v. American Bakery & Confectionery Workers International Union, Local 111*, 390 F.2d 79, 82 (5th Cir. 1968). The arbitral award must be affirmed.

### III

This Court has established that the Pension Dispute Board has exclusive jurisdiction to consider the merits of Plaintiffs' claims.[14] Plaintiffs contend, however, that,

**12.** Plaintiffs also argue that this Court has jurisdiction to review their dispute because the Eastern Air Lines Pilots' System Board of Adjustment determined that it had no jurisdiction to do so. A review of the Board's decision, however, has convinced this Court that Plaintiffs are being less than honest. The Board decided: "The undersigned make no determination as to jurisdiction. However, this System Board of Adjustment rules that this matter be directed to the Pension Dispute Board." *See* Exhibit M to Affidavit of David C. Vaughter. The Pension Dispute Board then decided Vaughter's dispute adversely to him. The decision of the Pilots' System Board of Adjustment neither influences nor affects this Court's jurisdiction.

Plaintiffs have not claimed that the arbitrator did not conform "to a specific contractual limitation upon his authority" or that the arbitral "award is irrational." 45 U.S.C. § 153 First (q).

**13.** This Court does not assay the legal correctness of the Pension Dispute Board's decision. In fact, in light of *Jackson v. Trans World Airlines, Inc.*, 457 F.2d 202 (2d Cir.1972), Plaintiffs' claim against Eastern seems dubious at best. In *Jackson*, the plaintiffs, senior flight engineers employed by the defendant, Trans World Airlines, Inc. ("TWA"), appealed from a summary judgment in favor of defendants TWA and the Air Lines Pilots Association International. The

district court denied the flight engineers' claim that certain provisions of their retirement plan had been improperly eliminated by a subsequent collective bargaining agreement. The Second Circuit affirmed the summary judgment, noting that "[r]etirement and pension plans are recognized as mandatory subjects of the collective bargaining process." *Id.* at 204 (citing *Elgin, Joliet and Eastern Ry. v. Brotherhood of Railway Trainmen*, 302 F.2d 540 (7th Cir.), *cert. denied*, 371 U.S. 823, 83 S.Ct. 42, 9 L.Ed.2d 63 (1962)). The court of appeals held that where the new collective bargaining agreement which amended the retirement plan applied equally to all senior flight engineers and pilots, there was no breach of contract or duty of fair representation.

It therefore seems doubtful that Eastern discriminated against its pilots or in any way acted improperly in 1965, a legal conclusion this Court need not and does not decide.

**14.** *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), established the exclusivity of the Railway Labor Act administrative process for resolution of contract disputes. There, the Supreme Court held that a railroad employee alleging a violation of a collective bargaining agreement must submit his dispute to the National Railroad Adjustment

pursuant to Section 502 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, they are entitled to de novo consideration of their claim by this Court. Plaintiffs are incorrect. ERISA, by its very terms, does not apply to "any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1144(b)(1).

Despite the clear language of this limiting clause, state and federal courts have had occasion to consider the very position advanced by Plaintiffs. In *Grich v. Wood & Hyde Leather Co.*, 74 A.D.2d 183, 427 N.Y.S.2d 96 (N.Y.App.Div.1980), plaintiff was employed by the defendant and participated in its profit sharing plan. In October 1974, plaintiff resigned from defendant's employ and, in March 1976, sought to withdraw his share from the plan. He was informed that he had forfeited his benefits pursuant to a provision of the plan permitting forfeiture in the event an employee leaves to work for a competitor. Plaintiff brought suit, arguing that his cause of action did not arise until after January 1, 1975 since it was not until after that date that he requested payment and a decision

was made denying him benefits. Plaintiff therefore contended that ERISA governed his cause of action. The Court rejected his contention.

> Even if it be assumed that plaintiff's cause of action did not arise until after he requested his benefits and his request was denied, several significant acts giving rise to his claim occurred prior to January 1, 1975. In our view, the occurrence of such acts before January 1, 1975 renders ERISA inapplicable.

*Id.* at 185, 427 N.Y.S.2d at 98.

In *Collins v. Trustees of Local 478 Trucking & Allied Industries Pension Fund*, 487 F.Supp. 520 (D.N.J.1980), a class of pensioners brought suit against a multi-employer trust, claiming that the trustees "unlawfully decided to increase the pension benefits of those retirees who retired after July 1, 1973, more than they increased the pension benefits of retirees who retired prior to July 1, 1973." *Id.* at 522. Defendants moved for summary judgment, alleging that there was no federal jurisdiction. In granting defendant's motion, the district court looked to 29 U.S.C. § 1144(b)(1) and noted that "[t]he plain language of the

---

Board in accordance with the RLA: "[T]he notion that the grievance and arbitration procedures provided for minor disputes in the Railway Labor Act are optional, to be availed of as the employee or the carrier chooses, was never good history and is no longer good law." The Court continued: "[P]etitioner's claim and respondent's disallowance of it, stem from differing interpretations of the collective bargaining agreement.... His claim is therefore subject to the Act's requirement that it be submitted to the Board for adjustment."

In an effort to circumvent the exclusive jurisdiction of the Railway Labor Act, Plaintiffs have here incorporated various common law causes of action in their complaint. These claims sound in negligence, conversion, unjust enrichment and breach of contract. These claims, however, cannot conceal the reality that the gravamen of Plaintiffs' complaint is a pension dispute.

In *De La Rosa Sanchez v. Eastern Airlines, Inc.*, 574 F.2d 29 (1st Cir.1978), a jet airliner captain alleged that the defendant, Eastern, "wrongfully and maliciously withheld [his Caribair] disability pension payments." *Id.* at 30. After determining that Eastern is subject to the Railway Labor Act, that pension benefits fall within the purview of the RLA, and that the RLA requires

that pension disputes be submitted to an adjustment board, the court observed:

> Plaintiff here seeks to make an end-run around the jurisdictional scope of RLA by the use of an ingeniously framed complaint alleging a tort. But getting down to basics, it becomes obvious that this action had its genesis in a pension dispute.
>
> \* \* \* \* \* \*
>
> The determination of whether plaintiff was entitled to any pension payments from Caribair and/or Eastern was exclusively for the Pilots System Board of Adjustment. In order for the district court to decide whether there had been wrongful and malicious withholding of Caribair pension payments, it would have to determine whether or not plaintiff was entitled initially to a Caribair pension. This was beyond its jurisdiction by virtue of the RLA.

*Id.* at 32.

Here, Plaintiffs are also attempting an "end-run" around the RLA. But however Plaintiffs characterize their claim, this action, like the action in *Sanchez*, is "in its genesis ... a pension dispute." *Id.* Plaintiffs may not avoid the jurisdictional bar of the RLA by alleging various common law causes of action. This matter is governed exclusively by the RLA.

**472**

statute has compelled courts to find 'that acts or omissions that occurred prior to the effective date of ERISA are not controlled by the provisions of the Act.' " *Id.* at 525 (quoting *Reuther v. Trustees of Trucking Employees of Passaic and Bergen County Welfare Fund,* 575 F.2d 1074, 1078 (3d Cir.1978) ). In *Collins,* "Plaintiffs contend that the prospective application of the statute is not intended where there is a 'continuing breach' as here alleged." *Id.* The court rejected the theory of a continuous violation " 'since it, in effect, would read the exception of section (b)(1) out of the statute.' " *Id.* (quoting *Martin v. Bankers Trust Co.,* 565 F.2d 1276, 1279 (4th Cir. 1977)).

■ These cases unquestionably dispose of Plaintiffs' ERISA claim. In their Amended Complaint, Plaintiffs allege that in 1965—ten years prior to the effective date of ERISA—Eastern confiscated their voluntary contributions to the 1947 plan and wrongfully commingled these contributions with assets of the 1965 plan. This alleged conduct constitutes "several significant acts giving rise to" Plaintiffs' claim. *Grich,* 74 A.D.2d at 185, 427 N.Y.S.2d at 98. Indeed, these acts constitute Plain-

tiffs' entire cause of action. Accordingly, ERISA cannot serve as a basis for de novo consideration of Plaintiffs' claim and, in fact, is inapplicable to this case.[15]

### IV

■ Even were this Court to conclude that it could properly vacate the decision of the Pension Dispute Board, it would still not reach the merits of Plaintiffs' claim. Accepting as true Plaintiffs' rendition of the facts, this Court is of the opinion that Plaintiffs' claim is barred by the applicable statute of limitations.

■ Eastern is an air carrier operating in interstate commerce and accordingly is governed by the provisions of the Railway Labor Act, §§ 151–188. Although the Railway Labor Act is silent as to the time within which a suit must be brought, "[i]t is well established that ... the federal courts must borrow the appropriate limitation period from the state law of the state where the court sits." *United Transportation Union v. Florida East Coast Ry.,* 586 F.2d 520, 525 (5th Cir.1978) (emphasis deleted). Choice of the "appropriate" state statute requires that the cause of action

---

**15.** Section 514(d) of ERISA, 29 U.S.C. § 1144(d), provides:

Nothing in this subchapter shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States (except as provided in sections 1031 [repealing the Welfare and Pension Plan Disclosures Act] and 1137(b) of this title) [amending 5 U.S.C. § 5108 to create additional GS–16, GS–17 and GS–18 positions in the Labor Department] or any rule or regulation issued under any such law.

Under the Railway Labor Act, system boards of adjustment are the mandatory and exclusive process for resolving grievance disputes. Section 514(d) makes clear that "ERISA was not intended to, nor did it, preempt the mandatory arbitration provisions of the Railway Labor Act." *Bonin v. American Airlines, Inc.,* 621 F.2d 635, 638 (5th Cir.1980).

In *Airline Pilots Association, International v. Northwest Airlines, Inc.,* 627 F.2d 272, 276 (D.C. Cir.1980), the District of Columbia Circuit considered the very position here advanced by Plaintiffs.

In the light of the plain directive of section 514(d), unsoftened as it is by anything in ERISA's history or background, we cannot

balance ERISA against the Railway Labor Act, as ALPA invites us to do, so as to interpret the former "to alter, amend, modify, invalidate, impair, or supersede" the compulsory arbitration provisions of the Labor Act. Nor are we persuaded that the legislative history of ERISA reveasl an affirmative Congressional intention to do away with all compulsory arbitration for pension maters.... There is nothing in this history to show that Congress also wanted to change, repeal, or modify a prior Congressional enactment, like the Railway Labor Act....

It thus seems clear that, notwithstanding the provisions of ERISA upon which Plaintiffs rely, the sole tribunal with jurisdiction to determine Plaintiffs' claim is the Pension Dispute Board. Vaughter's claim before the Pension Dispute Board and this Court relates solely to the interpretation and application of his collective bargaining agreement. Pursuant to Section 184 of the RLA and the relevant case law, jurisdiction to hear his claim is vested exclusively in the Pension Dispute Board (formerly the Retirement Board) established by Plaintiffs' collective bargaining agreement with Eastern. The exclusivity of the Pension Dispute Board's jurisdiction is in no way derogated by ERISA.

against the carrier be characterized properly. Characterization is a federal question. *See Butler v. Local 823, International Brotherhood of Teamsters,* 514 F.2d 442, 446 (8th Cir.), *cert. denied,* 423 U.S. 924, 96 S.Ct. 265, 46 L.Ed.2d 249 (1975).

No matter how Plaintiffs' cause of action is characterized, however, this Court finds that the statute of limitations has long since run. Plaintiffs' action could be characterized as one in tort, as one on a written contract or as one created by statute. Accordingly, Plaintiffs' claims are governed by either Fla.Stat. § 95.11(2)(b), § 95.11(3)(a), § 95.11(3)(f), or § 95.11(3)(p).

Fla.Stat. § 95.11(2)(b) provides that "[a] legal or equitable action on a contract, obligation or liability founded on a written instrument" "shall be commenced ... [w]ithin five years." "An action founded on negligence," Fla.Stat. § 95.11(3)(a), and "[a]n action founded on a statutory liability," Fla.Stat. § 95.11(3)(f) must be brought within four years. Similarly, Section 95.11(3)(p) provides that "[a]ny action not specifically provided for in these statutes" is to be commenced within four years.

Plaintiffs instituted this action on December 17, 1980. Their Amended Complaint, however, establishes that Plaintiffs' cause of action accrued in 1965, when Eastern allegedly confiscated the Plaintiffs' voluntary contributions to the 1947 Pension Plan. Paragraph 21 of Plaintiffs' Complaint, as amended, asserts:

> In 1965, Defendant, EAL, initiated a new Pension Retirement Plan (THE NEW PLAN) under which the members of the Plaintiff Class made no contributions. At the inception of THE NEW PLAN, the members of the Plaintiff Class were divested of all right and title to their past contributions under THE ORIGINAL PLAN and those monies were then co-mingled with funds to be used for the purchase of annuities under THE NEW PLAN. All pilots in the employ of Defendant, EAL, who were eligible for THE NEW PLAN should have accrued benefits based on the terms of THE NEW PLAN, without reduction in those benefits by the amount of cash contributions made to THE ORIGINAL PLAN.

Based on Paragraph 21, it is plain that regardless of the manner in which Plaintiffs' cause of action is characterized and regardless of which Florida statute of limitations governs this action, Plaintiffs' claim was barred no later than 1970, ten years prior to the institution of this action.

In their Reply to Defendants' Motion for Summary Judgment, however, Plaintiffs have vacillated from their position in Paragraph 21 of their Complaint. Now, according to the Plaintiffs, "[t]he fallacy with ... [Defendants' argument is that the contributions were not confiscated until EASTERN returned contributions to the mechanics and non-contract employees in 1979, to the flight attendants in 1980, and ever since then, EASTERN has refused to recognize its obligations to return the voluntary contributions to the pilots."

■■■ The Court must again disagree. Plaintiffs' cause of action accrued in 1965. Eastern refunded voluntary contributions to its flight attendants, mechanics and non-contract employees in 1979 and 1980. These refunds merely prompted Plaintiffs to bring this suit; they did not affect Plaintiffs' claim. The Fixed Benefit Retirement Income Plan is, as already established by this Court, a part of the collective bargaining agreement between Eastern and ALPA. Eastern cannot return the pilots' voluntary contributions until and unless the return of the contributions is negotiated by ALPA. *See* Affidavit of Alan C. Gibson, Exhibit F to Defendants' Response to Plaintiffs' Reply to Motion for Summary Judgment. Eastern was able to refund contributions made by its flight attendants and mechanics because their unions negotiated and approved the return of the voluntary contributions made by their members. Additionally, Eastern was able to return voluntary contributions to its non-union employees because the return of such funds was not subject to any collective bargaining. *Id.*

The Plaintiffs who are represented by ALPA, which has not negotiated for the

return of the pilots' contributions, are not similarly situated with the non-union employees or the flight attendants and mechanics whose unions have negotiated for the return of voluntary contributions. The Plaintiffs' class action accrued in 1965. It did not depend upon and was not affected by the treatment afforded to the flight attendants, mechanics and non-union employees in 1979 and 1980. Accordingly, Plaintiffs' action is time barred.

## V

For the foregoing reasons, Defendants' Motion for Summary Judgment is granted. Defendants shall therefore, within ten (10) days from the date of this Order, prepare and submit to this Court a Proposed Final Judgment in accordance with this Order.

