817 F.2d 685
 7 Fed.R.Serv.3d 1419
 David C. VAUGHTER, Plaintiff-Appellant,
Donald H. Sigler, Plaintiff,
v.
EASTERN AIR LINES, INC., a Delaware corporation; a
Voluntary Fixed Benefit Pension Retirement Plan initiated by
Eastern Airlines, Inc., in 1947; a Non-Contributory Fixed
Benefit Pension Retirement Plan initiated by Eastern Air
Lines, Inc., in 1965, Defendants-Appellees.
 No. 85-5912.
 United States Court of Appeals,
Eleventh Circuit.
 May 20, 1987.
 
 David Popper, Popper & Popper, Richard A. Grande, Miami, Fla., for plaintiff-appellant.
 James E. Tribble, Blackwell, Walker, Fascell & Hoehl, Angela L. DerOvanesian, Miami, Fla., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Florida.
 Before KRAVITCH and HATCHETT, Circuit Judges, and MORGAN, Senior Circuit Judge.
 KRAVITCH, Circuit Judge:
 
 
 1
 The representative of a class of current and former Eastern Airlines pilots appeals the summary judgment for defendants in a suit seeking reimbursement of contributions that the pilots paid into Eastern's voluntary pension program prior to 1965. See Vaughter v. Eastern Air Lines, Inc., 619 F.Supp. 463 (S.D.Fla.1985). Appellant David C. Vaughter contends that funds the Eastern pilots paid into the pension system were illegally divested from them in 1965 when, as a result of a collective bargaining agreement, Eastern assumed the financial obligation of funding the pilots' pensions. We conclude that the district court properly found that the claims raised by the plaintiff class accrued in 1965, and thus either were not cognizable under the federal Employment Retirement Income Security Act or were barred by the applicable statute of limitations. Consequently, we affirm the district court's summary judgment for defendants.
 
 I. BACKGROUND
 
 2
 In 1947, Eastern Airlines established for its employees a fixed benefit pension program financed by voluntary contributions from individual employees and by supplemental contributions by Eastern. In 1965, pursuant to an agreement between Eastern and the pilots' collective bargaining agent, the Air Line Pilots Association International, AFL-CIO (ALPA), Eastern assumed the burden of funding the pension program for its pilots. Although ALPA had been the collective bargaining agent for Eastern pilots since 1941, ALPA had played no role in the establishment of the pension plan and had negotiated no modifications of the plan before 1960.[1]
 
 
 3
 Under the terms of the pension program, both as it existed before 1965 and afterwards, contributors were entitled to return of their contributions only in the event of death or termination of their employment with Eastern prior to retirement. Despite this limitation on withdrawal by all employees covered by the contributory pension plan, Eastern in 1979 entered a collective bargaining agreement with the International Association of Machinists whereby the airline agreed to return the voluntary pension contributions of employees represented by that union. Eastern agreed in 1980 to return the voluntary contributions of its non-union employees.
 
 
 4
 In 1980, Vaughter filed a petition with Eastern requesting the return of all voluntary contributions made by him into the pilots' pension plan prior to 1965. Pursuant to the collective bargaining agreement between Eastern and ALPA, Vaughter was granted a hearing before the Eastern Air Lines Pilots' System Board of Adjustment, which, in turn, referred the matter to the Pension Dispute Board. The Pension Dispute Board, composed of two members chosen by Eastern and two chosen by the pilots' union, unanimously rejected Vaughter's claims. The Board concluded that the pension plan and the collective bargaining agreement do not provide for reimbursement of voluntary contributions made by pilots prior to 1965.
 
 
 5
 Vaughter and Donald H. Sigler[2] then filed this class action in federal district court. The complaint alleged that pilots who had made voluntary contributions to the system prior to 1965 were divested of all rights to these contributions once Eastern began funding the system. According to the complaint, the past voluntary contributions were commingled with the funds provided by Eastern to be used for purchases of annuities under the noncontributory plan, with the result that pilots who previously had contributed were entitled to the same benefits as those who had not contributed. The complaint also asserted that Eastern had returned the voluntary contributions of various Eastern employees who were not pilots. It alleged breach of fiduciary duty under the Employment Retirement Income Security Act (ERISA), 29 U.S.C. Secs. 1001, et seq., and under state law, as well as state law claims of breach of contract, negligence, unjust enrichment, and conversion. The complaint requested the return, with interest, of all voluntary contributions by pilots.
 
 
 6
 The district court found that the plaintiffs had satisfied the requirements of Rule 23(a) of the Federal Rules of Civil Procedure for maintenance of a class suit. The court subsequently ordered notification of members of a class defined as those pilots who were employed by Eastern between October 1, 1947, and June 1, 1965, and who made voluntary contributions to the pension plan. The court required that the potential class members be notified that they could opt out of the class or, if they chose to remain as class members, request representation by their own counsel. Despite ordering the notice provisions applicable only to a Rule 23(b)(3) class, the court did not specifically designate whether the class as defined fell under Rule 23(b)(1), (2), or (3).
 
 
 7
 After the conclusion of discovery, the parties agreed that there were no genuine factual disputes and filed cross motions for summary judgment.[3] The district court granted summary judgment for defendants on three grounds. First, construing the state law assertions as claims raised under the Railway Labor Act,[4] 45 U.S.C. Secs. 151-188, the court determined that under the standards established in Loveless v. Eastern Air Lines, Inc., 681 F.2d 1272, 1275 (11th Cir.1982), it lacked authority to overrule the decision of the Pension Dispute Board. 619 F.Supp. at 467-70. Second, the court found that plaintiffs had not asserted a valid claim under ERISA, as the Act expressly does not apply to "any cause of action which arose, or any act or omission which occurred, before January 1, 1975." Id. at 470-72. Finally, the court concluded that the Railway Labor Act claims were barred by the applicable statute of limitations. Id. at 472-74.
 
 II. TIMELINESS OF THE APPEAL
 
 8
 Before we may address the merits of the appeal, we must determine a threshold jurisdictional issue: whether the appellant filed a timely notice of appeal from a final order. Eastern contends, in a motion to dismiss the appeal, that Vaughter's only notice of appeal is invalid under Rule 4(a)(4) of the Federal Rules of Appellate Procedure because it was filed during the pendency in the district court of a motion to alter or amend filed pursuant to Rule 59(e) of the Federal Rules of Civil Procedure.
 
 
 9
 The district court's initial summary judgment order defined the plaintiff class as "consisting of all those pilots employed by [Eastern] at any time between October 1, 1947 and June 1, 1965 (who may be retired or may still be on active duty) who made voluntary contributions" to the pension fund. Within ten days after the district court entered the order, Eastern filed what it denominated as a Fed.R.Civ.P. 59(e) motion to alter or amend the judgment. Eastern requested in the motion that the district court amend the summary judgment order to clarify the subdivision of Rule 23(b) under which the class was maintained and, if necessary, to include the names of the class members. While Eastern's motion to alter or amend was pending, Vaughter filed a notice of appeal to this court. The district court granted Eastern's motion and entered an amended order defining the class as excluding those pilots who did not receive notice or who requested exclusion from the class. A list of the names of class members was attached to the amended order as an exhibit. Vaughter did not appeal from the order as amended.
 
 
 10
 Vaughter asserts two arguments against dismissal of the appeal. First, he contends that Eastern should not succeed on the motion to dismiss because the need for the motion to alter or amend was created by Eastern's own carelessness in crafting its motion for summary judgment. Second, he claims that although Eastern designated its motion to alter or amend as one filed pursuant to Fed.R.Civ.P. 59(e), the motion is more accurately characterized as a Rule 60(a) motion and thus did not affect the finality of the initial summary judgment order.
 
 
 11
 If Vaughter suggests in the first contention that this court should apply equitable principles to overlook a deficiency in the timeliness of their notice of appeal, he is asking the court to act outside its authority. "[T]he requirement of a timely notice of appeal is 'mandatory and jurisdictional.' " Griggs v. Provident Consumer Discount Co., 459 U.S. 56, 61, 103 S.Ct. 400, 403, 74 L.Ed.2d 225 (1982) (per curiam) (quoting Browder v. Director, Illinois Dept. of Corrections, 434 U.S. 257, 264, 98 S.Ct. 556, 560, 54 L.Ed.2d 521 (1978)). The plain language of Fed.R.App.P. 4(a)(4) states that if a Fed.R.Civ.P. 59(e) motion to alter or amend is timely filed by either party, any notice of appeal filed prior to the disposition of the motion "shall have no effect." Consequently, if Eastern's motion to alter or amend is properly considered a Rule 59(e) motion, Vaughter's notice of appeal is "a nullity," and this court "lacks jurisdiction to act." Griggs, 459 U.S. at 61, 103 S.Ct. at 403. If, however, Eastern's motion was a Rule 60(a) motion to correct an "error[ ] ... arising from an oversight or omission," the notice of appeal was timely filed.
 
 
 12
 Whether a particular post-judgment motion is properly characterized as one filed under Rule 59(e) or under Rule 60(a) often is a close question, for there is "considerable overlap" between the two rules. 11 C. Wright & A. Miller, Federal Practice and Procedure Sec. 2817 (1973). As a general proposition, the district court may act under Rule 60(a) only to correct "mistakes or oversights that cause the judgment to fail to reflect what was intended at the time of the trial." Mullins v. Nickel Plate Mining Co., 691 F.2d 971, 973 (11th Cir.1982). Corrections or alterations that "affect the substantial rights of the parties, however, are beyond the scope of rule 60(a)." Id.; see 11 Wright & Miller Sec. 2854 (Rule 60(a) motions "can only be used to make the judgment or record speak the truth and cannot be used to say something other than what was originally pronounced") (footnote omitted).
 
 
 13
 Eastern contends that the district court's amendment to the summary judgment order affected the substantial rights of the parties in that the res judicata effects of the judgment would vary according to the definition of the class and the designation of the class members. Vaughter argues, however, that the amendment of the class definition simply clarified the previous understanding and intent of the parties and the court regarding who would be bound by the judgment.
 
 
 14
 We agree with Vaughter that the court's amendment served simply to reflect what was intended in the original summary judgment order. We note initially that Fed.R.Civ.P. 23(c)(3) provides that judgments in class actions maintained under Rule 23(b)(1) and (2) "shall include and describe those whom the court finds to be members of the class" and that judgments in Rule 23(b)(3) actions "shall include and specify or describe those to whom ... notice ... was directed, and who have not requested exclusion, and whom the court finds to be members of the class." A district court thus is required by Rule 23 to designate the class bound by the judgment in a class action. Consequently, where the parties have operated under the understanding that a suit is being maintained as a class action, the failure of the district court to designate in the judgment the class thereby bound may be deemed an oversight or omission subject to correction pursuant to Rule 60(a). See Gurule v. Wilson, 635 F.2d 782 (10th Cir.1980) (upholding district court's post-judgment certification of class under Rule 60(a)); cf. Bing v. Roadway Express, Inc., 485 F.2d 441, 447 (5th Cir.1973) (certifying class on appeal where district court failed to order maintenance of class action under Fed.R.Civ.P. 23(c)(1) but "[t]he parties and the court believed that this was a class action").[5]
 
 
 15
 Here, rather than omitting the class designation entirely, the initial judgment defined the class in a manner inconsistent with the prior proceedings in the case. The initial judgment defined the class as though the action were maintained as a suit under Rule 23(b)(1) or (2).[6] Yet nowhere does the record suggest that either the parties or the court ever contemplated a class under either of those provisions. Certainly, Rule 23(b)(2) was not applicable, as the suit seeks more than just the injunctive and declaratory relief generally available under that provision. Nor was there any suggestion that the court contemplated certification of a Rule 23(b)(1) class. Normally, the mere possibility that a defendant might be liable for payments to some potential class members but not to others does not constitute the "incompatible standards of conduct" of concern in Rule 23(b)(1)(A), nor does it threaten to impair the ability of some claimants to protect their interests as addressed in Rule 23(b)(1)(B). See 3B Moore's Federal Practice paragraphs 23.35, 23.35. Conceivably, however, a Rule 23(b)(1) class might have been certified under the rationale that the voluntary pension contributions were contained in a common fund that theoretically was subject to evaporation as a result of recoveries by individual claimants. See Hernandez v. Motor Vessel Skyward, 61 F.R.D. 558, 561 n. 8 (S.D.Fla.1974), aff'd, 507 F.2d 1278 (5th Cir.1975). But see In re Northern Dist. of California Dalkon Shield IUD Products Liability Litigation, 693 F.2d 847 (9th Cir.1982) (Rule 23(b)(1) certification improper without evidence that recovery by plaintiffs would result in likely insolvency of defendants); 3B Moore's Federal Practice p 23.35 (criticizing Hernandez ). Yet the record here does not indicate that either the court or the parties ever considered the possibility of Rule 23(b)(1) certification under the common fund theory.
 
 
 16
 Despite Eastern's assertions to the contrary, the only ambiguity regarding the type of class at issue was the class definition contained in the initial summary judgment. Throughout the proceedings in the district court, the parties and the court operated under the belief that the class had been certified under Rule 23(b)(3). The Notice of Pendency of Class Action and of Rights of Class Members which the court ordered to be distributed to all potential class members expressly stated that the class members had the option, available only in Rule 23(b)(3) actions, of excluding themselves from the class and thus from the binding effects of the judgment.[7] The court also ordered that the notice contain an exclusion form to be used by those electing to opt out of the class. Of the 1,759 potential class members, approximately 140 availed themselves of the exclusion option. Furthermore, far from questioning the use of procedures applicable only in Rule 23(b)(2) actions, Eastern objected that the class notification proposed by the plaintiffs, which ultimately was approved by the court, did not supply sufficient information to enable the potential members "to decide whether to participate in the action."
 
 
 17
 In view of this substantial evidence demonstrating the clear and consistent intention by all concerned to proceed under Rule 23(b)(3), we conclude that the court's amendment to the summary judgment order was a correction of an oversight under Rule 60(a), see Gurule v. Wilson, supra; cf. Bing v. Roadway Express, Inc., supra, and thus did not nullify appellant's previous notice of appeal. Accordingly, we have jurisdiction to examine the merits of Vaughter's claims.
 
 III. ACCRUAL OF PLAINTIFF CLASS' CLAIMS
 
 18
 The district court based the summary judgment for defendants on three grounds: (1) that under the Railway Labor Act, 45 U.S.C. Sec. 184, as construed in Loveless v. Eastern Air Lines, Inc., supra, the court lacked authority to overrule the decision of the Pension Dispute Board; (2) that ERISA did not grant the court authority to review the Board's decision, as the claims asserted by the plaintiff class accrued in 1965 and thus were not cognizable under ERISA; and (3) that the claims deemed to be asserted under the Railway Labor Act accrued in 1965 and thus were barred by the applicable statute of limitations. We need not consider Vaughter's challenges to the district court's application of Loveless, for we conclude that the court properly found that the claims of the plaintiff class accrued in 1965 and thus are not cognizable under ERISA and/or are time barred.
 
 
 19
 Vaughter concedes that the class' claims are not viable if they are deemed to have arisen at the time of the implementation of Eastern's funding of the pension system in 1965. ERISA expressly does not apply to "any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. Sec. 1144(b)(1). Moreover, under Florida law as incorporated into the Railway Labor Act, see United Transportation Union v. Florida East Coast Ry., 586 F.2d 520, 525 (5th Cir.1978), plaintiffs had five years to assert their claims under the most generous statute of limitation possibly applicable. See Fla.Stat. Sec. 95.11(2)(b) (1982) (action on written contract); cf. id. Secs. 95.11(3)(a), (f), (p) (four-year limitation for claims based on negligence, "statutory liability," and actions without a limitation period elsewhere specified).
 
 
 20
 In attempting to evade the bars posed to their claims by these time constraints, Vaughter contends that the pilots' causes of action under either ERISA or the Railway Labor Act did not accrue until Eastern agreed in 1979 to return the voluntary pension payments of employees who were not pilots. Vaughter asserts two related theories in support of this contention. First, he claims that until Eastern returned the voluntary contributions of the other employees, the pilots could not have been aware that they could obtain their own prior contributions except according to the terms of the pre-1965 pension system. He argues that under Florida law, as incorporated into the Railway Labor Act, the statute of limitations does not begin to run until the aggrieved party is aware or should have been aware of facts necessary to assert the cause of action. See, e.g., Senfeld v. Bank of Nova Scotia Trust Co., 450 So.2d 1157, 1162 (Fla.App. 3d Dist.1984) (conversion claim). Second, Vaughter contends that the return by Eastern of the voluntary contributions of non-pilots arbitrarily discriminated against the pilots and thus constituted the final element necessary for the pilots to assert their claims under either the Railway Labor Act or ERISA.
 
 
 21
 Vaughter, however, has failed to explain how the return by Eastern of the voluntary contributions to employees other than pilots either was necessary to make the pilots aware of facts essential to their claims or in any way affected the substance of their claims. Despite Vaughter's protests to the contrary, the essence of the pilots' claims is that their voluntary contributions were divested from them when Eastern began funding the pension program in 1965 and that, as a result, they were discriminated against vis-a-vis the noncontributing pilots.[8] Although Vaughter now asserts that the claims are in some way based upon discrimination between the pilots and those Eastern employees who received return of their contributions, the complaint contains no such allegation. The complaint does not suggest, for example, that the return by Eastern of the non-pilots' contributions resulted in a decrease in the pilots' benefits. Instead, the amended complaint states only that the contributions were returned to the other employees, while the contributions of the pilots "were withheld from those pilots, converted and co-mingled" with the funds provided by Eastern after 1965. The complaint elsewhere makes clear, however, that the alleged withholding, conversion, and commingling occurred initially in 1965. Moreover, there is no doubt that the Eastern pilots who had contributed to the program were informed of these essential facts underlying their claim. The subsequent return of contributions to other Eastern employees thus served only to make the pilots realize that they too might be able to recover their own contributions. The claims, consequently, accrued when the pilots became aware of the facts necessary to make their claims, not when they discovered that they had a possibly viable legal claim based upon those facts. See, e.g., Branford State Bank v. Hackney Tractor Co., 455 So.2d 541, 542 (Fla.App. 1 Dist.1984) (under Florida law, accrual of claim occurs upon " 'the aggrieved party's discovery or duty to discover the act constituting an invasion of his legal rights' ") (quoting Creviston v. General Motors Corp., 225 So.2d 331 (Fla.1969)); Martin v. Bankers Trust Co., 565 F.2d 1276, 1278 (4th Cir.1977) (ERISA inapplicable to claims "based upon events which occurred even before ERISA had been signed into law").
 
 IV. CONCLUSION
 
 22
 For the foregoing reasons, appellee's motion to dismiss the appeal is DENIED; the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 The parties agree that this court erroneously stated in Loveless v. Eastern Air Lines, Inc., 681 F.2d 1272, 1273 (11th Cir.1982), that the pension program was established in 1947 as part of a collective bargaining agreement between Eastern and ALPA. This misstatement of fact had no effect on the court's resolution of Loveless, nor does it affect our decision here
 
 
 [2]
 Sigler died while the suit was pending in the district court
 
 
 [3]
 Despite the parties' agreement that the case presents no material factual disputes, their cross motions for summary judgment contained contradictory statements concerning whether the pilots receive any benefit from their pre-1965 contributions. The plaintiff pilots alleged that they receive the same retirement benefits as those pilots who did not contribute. Eastern contended that the pilots who did contribute receive additional retirement benefits because of their contributions. A supporting affidavit stated that Vaughter receives $4,441 more per year as a result of his contributions and that Sigler received an additional $4,115. Neither the parties nor the district court addressed this apparent factual discrepancy. The existence of this possible factual dispute does not affect our resolution of the case on other grounds
 
 
 [4]
 The district court held that the complaint essentially involved a pension dispute, and thus, under Andrews v. Louisville & Nashville R.R., 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972), is governed exclusively by the Railway Labor Act. See 619 F.Supp. at 470 n. 14. Vaughter has not contested this holding on appeal
 
 
 [5]
 The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [6]
 Fed.R.Civ.P. 23(b) provides:
 Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:
 (1) the prosecution of separate actions by or against individual members of the class would create a risk of
 (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
 (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or
 (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.
 
 
 [7]
 Fed.R.Civ.P. 23(c)(2) provides:
 In any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice shall advise each member that (A) the court will exclude him from the class if he so requests by a specified date; (B) the judgment, whether favorable or not, will include all members who do not request exclusion; and (C) any member who does not request exclusion may, if he desires, enter an appearance through his counsel.
 
 
 [8]
 Plaintiffs' principal assertions are contained in the following two paragraphs of the complaint:
 
 
 [21]
 In 1965, Defendant [Eastern], initiated a new Pension Retirement Plan (THE NEW PLAN) under which the members of the Plaintiff Class made no contributions. At the inception of THE NEW PLAN, the members of the Plaintiff Class were divested of all right and title to their past contributions under THE ORIGINAL PLAN and those monies were then co-mingled with funds to be used for the purchase of annuities under THE NEW PLAN. All pilots in the employ of Defendant, [EASTERN], who were eligible for THE NEW PLAN should have accrued benefits based on the terms of THE NEW PLAN, without reduction in those benefits by the amount of cash contributions made to THE ORIGINAL PLAN
 
 
 [22]
 THE NEW PLAN discriminated in favor of pilots becoming eligible after 1965 in that those pilots were required to pay nothing for the same retirement benefits which will be received by the members of the Plaintiff Class. Although the members of the Plaintiff Class contributed large sums of money prior to 1965, their rights to benefits under THE NEW PLAN are not greater than pilots who became eligible when no contributions were required. Members of the Plaintiff Class have been discriminated against because they have been forced to pay for retirement benefits which they should receive at no cost under THE NEW PLAN